Robinson, J.
 

 This action was begun in the municipal court of the city of Cleveland by Florence G-oldman, a minor, etc., against the Cleveland Railway Company. The plaintiff recovered a judgment, which judgment was affirmed by the Court of Appeals. The parties will be referred to here in the relation they occupied in the municipal court.
 

 The plaintiff, in her statement of claim, alleged that she received her injury when she was crossing Euclid avenue at its intersection with East Twelfth street; that proceeding from the northwest corner, she was crossing from the northerly side of Euclid avenue to the southerly side, pursuant to an automatic traffic light which at the time showed green for southerly traffic; that, when she reached the northerly car tracks, a westbound street ear of the defendant struck her, threw her on its fender, and injured her; that the defendant was negligent, in
 
 *75
 
 that the street car was operated in a westerly direction across the intersection at a time when the traffic light required west-bound traffic to be at a standstill ; that no warning was given of the approach of the street car, and that, when the operator of the street car saw, or in the exercise of ordinary care, should have seen, plaintiff upon the street car tracks, he did not bring his car to a stop so as to avoid hitting her.
 

 The defendant filed a statement of defense, in which it admitted the collision between plaintiff and one of its street cars, and denied the injury to plaintiff and negligence upon its part.
 

 The plaintiff was a witness in her own behalf and testified that she was fifteen years of age; that she attended the public schools, and there was taught the significance of the red, yellow, and green traffic lights; that she, in company with her younger sister, approached, upon Euclid avenue, the intersection of that avenue and East Twelfth street, and waited at the northwest corner of such intersection for the traffic signal to change from red to green in favor of traffic northerly and southerly; that, when it did so change, she waited for several automobiles to come out of the intersection, and, while the light was yet green, she started to cross Euclid avenue in a southerly direction, along the crosswalk of Twelfth street; that, as she stepped off the sidewalk, she looked to her left and saw a street car and several automobiles standing on Euclid avenue on the east side of its intersection with Twelfth street; that she then proceeded southerly along said crosswalk, without again looking at the .light or again looking toward her left; that, when she stepped upon the
 
 *76
 
 north track of the defendant company on Euclid avenue, she was struck by one of the defendant’s cars and injured.
 

 She called as a witness Mrs. Foyer, who testified as follows: “Q. Why didn’t you cross the street immediately as you got there? A. On account of the light. Q. How long did you wait there, Mrs. Foyer? A. Just a second. A minute. Just stood there a short time. Q. Did you notice any street car standing on the other side of the intersection? A. Well, I don’t know whether it was standing. I just watched the green light to pass, to cross there, and get my Lee road bus. Q. Then you proceeded to cross the street? A. Yes, sir. Q. As you were crossing the street— A. Other people crossing. Q. Other people crossing, what happened? A. Why, as I crossed the street, why the car came and the children were lifted on the fender. We had the right of way. I had the right of way. * * * Q. Now, where were you in the street, when you say you saw these children picked up by the fender? A. Why, I was stepping right in back of them. Q.. You were right behind them? A. I was going to cross, they must have been right in front of me. Q. Just a step in front of you? A. They must have been— Q. Right close? A. Well, I imagine they were a little bit to the side of me. Q. Did you see the street car at that time? A. I saw the street car, yes. It — I didn’t — I just watched the light more than the street car, but I think the street car came right on, you know, and the lights hadn’t changed. * * * Q. How close were you to the rail of the track? A. Why, about this distance, I should imagine [indicating]. * * * Q. About three or four
 
 *77
 
 feet? A. Yes. Q. And did you leave the curb about the same time these little girls did? A. I didn’t pay no attention to these children. I was just watching the light, to get across. Q. I see, and you saw the street car coming on? A. The street car didn’t stop. It should have stopped. Q. You watched it come on, then? A. Why, I didn’t expect it to come. Q. Well, you said you saw it moving? A. Why, certainly I saw it moving, when it was almost on top of us. Q. Well, you said you saw it moving when you were at the curb, I thought? A. It — I say it was moving, when it should not have. It should have stood still, because we had the right of way. I know I had the right of way. ’ ’
 

 By this witness the plaintiff’s evidence tended to prove that the light had not changed from green in her favor to red against her up to the instant of the collision; that is, that she had the right of way against the defendant company from the time she left the curb to the instant of the collision — presenting a situation where she was entitled, in the absence of actual knowledge to the contrary, to assume that the defendant would observe the traffic signal and refrain from contesting with her such right of way.
 

 The fact that she did not again look’at the light does not necessarily require the inference that she was proceeding without reference to it; she having testified that she was familiar with the traffic signals in that city and started to cross while she had the green signal, her evidence would support a reasonable inference that she knew the green light would stay on the regular interval of time and that she acted upon her knowledge of the time that had elapsed.
 

 
 *78
 
 The evidence of Mrs. Foyer tended to prove negligence upon the part of the defendant, and also to dispel the inference, if any, of contributory negligence raised by the plaintiff, and therefore presented a case for submission to the jury.
 

 The second assignment of error relates to the court’s charge with respect to the effect of a violation of a municipal ordinance. The portion of the charge complained of reads:
 

 “If you find from the greater weight of the evidence that there was a violation on the part of the Defendant Company, or a violation on the part of Plaintiff, of this law which the Court has just given you, then that violation you may consider as
 
 prima facie
 
 evidence of' negligence on the part of the one guilty of such violation. But that legal presumption of negligence may be rebutted or overcome by proof to the contrary.”
 

 The evidence in this case was in conflict, both as to the negligence of the defendant and the contributory negligence of the plaintiff. However, there was no evidence to the effect that the plaintiff violated the traffic signal, unless it be inferred from her presence in the street at a time when the street car, starting with the green signal, had crossed the intersection to the point of collision. Such an inference does not appear to be necessary or reasonable, since plaintiff testified that she did not start immediately upon receiving the signal, but started while she still had the signal. If she did so start, the fact, if it be a fact, that the signal changed before she reached the car tracks, would not constitute her a violator of the ordinance, but would present the situation of both the plaintiff and the defendant being lawfully in the
 
 *79
 
 intersection, -with, equal rights hut unequal ability to instantly yield to the other the right of way — neither having the right to use that portion of the intersection which the other at the instant occupied; each for his own safety being required to take into consideration the ability or lack of ability of the other to stop or deviate from his course. A hazardous situation similar to that in which every pedestrian at a busy intersection has often found himself and will often so find himself until traffic experts decide to abandon the third caution light and inaugurate as a part of their traffic-directing system a two-light system, with an interval of red stop lights in all directions long enough to enable those rightfully in the intersection to emerge therefrom.
 

 The charge as given was more favorable to the defendant upon the subject of its negligence than the law as laid down in the case of
 
 Schell
 
 v.
 
 DuBois, Admr.,
 
 94 Ohio St., 93, 113 N. E., 664, L. R. A., 1917A, 710, warrants. We are of opinion, however, that there was no evidence that tended to prove that the traffic signal was against the plaintiff when she started to cross the street, and, even though the evidence may have tended to prove contributory negligence upon her part thereafter, such negligence did not arise out of a violation of the ordinance. Hence the charge as applied to such a violation by the plaintiff was not prejudicial to the defendant.
 

 A third specification of error relates to the charge of the court upon the subject of the burden of proof and the preponderance of evidence. That portion of the charge complained of reads:
 

 “Now by greater weight of the evidence or the preponderance of the evidence we do not mean that
 
 *80
 
 one side or the other must produce the larger number of witnesses or the greater amount of testimony. By that expression ‘preponderance of the evidence,’ or ‘greater weight of the evidence,’ we mean simply this: That after you have considered all of the evidence, and having in mind all of the circumstances surrounding this case, before the plaintiff can recover you must find that the evidence weighs just slightly more in her favor. If your verdict is for the defendant, then you must find that the evidence weighs just slightly more in favor of the defendant. ’ ’
 

 This paragraph, considered by itself, placed upon the defendant the burden of proving its own lack of negligence. The major controversy in this case was whether the defendant operated its car against a red or stop light, and the burden of furnishing the preponderance of proof upon that subject was upon the plaintiff; and, while the court elsewhere in his charge quite clearly and correctly instructed the jury that such burden was upon the plaintiff, this paragraph, given near the end of his charge, and as his last expression upon the subject of burden of proof, may well have left a greater impression upon the minds of the jurors than the correct charge upon the same subject, theretofore given them. The jurors are not presumed to be able to determine which of two conflicting declarations of the law by the court is correct.
 

 The prejudicial effect of the erroneous paragraph in the charge appears to be more probable in the instant case because of the fact that the preponderance of the proof in favor of the plaintiff does not appear upon the cold record, and could only have been found by the jury to exist by its finding that
 
 *81
 
 the evidence upon the subject was irreconcilable, and some of it necessarily false, and by determining the true from the false — a process which does not and cannot appear upon the record, and a function which the jury very properly performs. In a case where the- margin of preponderance of proof is so fine that it can only be determined to exist by such a process, the aggrieved party will be presumed to have been prejudiced by the placing upon him of a greater burden of proof than was his by law.
 

 A fourth assignment of error relates to the admission of evidence of a disturbance, by the injury, of the periods of menstruation of plaintiff, which the defendant denominated as “special damages not pleaded.” We are of opinion that the evidence admitted was competent, not as proof of .an injury additional to those pleaded, but as proof of a physical fact tending to prove the injury pleaded, as ‘ ‘ severe shock to the whole nervous system.” The court was not asked to limit its scope.
 

 The judgment will be reversed.
 

 Judgment reversed.
 

 Marshall, C. J., Kinkade, Jones, Matthias, Day and Allen, JJ., concur.