Matthias, J.
 

 The question of first importance in these cases is the validity of the ordinance introduced in evidence and the correctness of the instruction to the jury based thereon.
 

 By the provisions of Section 3, Article XVIII, of the state Constitution, authority is conferred upon municipalities to adopt and enforce within their limits such police, sanitary and other similar regulations as are not in conflict with general laws. The power thus conferred by the Constitution cannot be denied or abridged by statute.
 
 City of Fremont
 
 v.
 
 Keating,
 
 96 Ohio St., 468, 118 N. E., 114. The police power conferred, however, is not an unrestricted power. On the contrary, it is specifically limited to the adoption and enforcement of such “local police, sanitary and other similar regulations” as are not in conflict with general laws. It follows that in so far as there is a conflict, the local regulation would be invalid.
 
 Schneiderman
 
 v. Sesanstein, 121 Ohio St., 80, 167 N. E., 158, 64 A. L. R., 981, and cases there cited. In that case it was held as follows:
 

 “An ordinance of a municipality which prescribes a
 
 *444
 
 manner of driving or a rate of speed of automobiles in conflict with the provisions of the statute is invalid.
 

 “The provision of an ordinance of a municipality which makes unlawful a rate of speed exceeding fifteen miles per hour, regardless of whether such speed is greater than reasonable and proper, considering the width, traffic, use and the general and usual rules of such road or highway, is in conflict with Section 12603, General Code, and therefore invalid.”
 

 The provisions of the ordinance in question in that case specified a limitation of speed different from that prescribed by the statute (Section 12603, General Code). The provisions of the ordinance before us in the instant cases are the same as the statute in respect to the specified rates of speed which shall be
 
 prima facie
 
 evidence of a speed greater than is reasonable and proper. There are, however, two very essential and vital differences between the ordinance and the statute. The statute specifically provides that “it shall be
 
 prima facie
 
 lawful for the operator of a motor vehicle
 
 to
 
 drive the same at a speed not exceeding” the specific rates therein enumerated, which provision is entirely absent from the ordinance. But in addition to the other provisions substantially as set forth in the statute, the ordinance further provides that “the speed of vehicles shall be governed by conditions and may be deemed reckless even though at a speed within the limit allowed by this section; and any speed which is inconsistent with the absolute safety of pedestrians and other vehicular traffic by reason of weather conditions, highway conditions, congestion of traffic, or any cause whatsoever, shall be considered
 
 prima facie
 
 evidence of reckless driving.” It is' to be observed, therefore, that, while under the statute it is made
 
 prima facie
 
 lawful to operate a motor vehicle at a speed not exceeding the rate specified, the ordinance makes it
 
 prima facie
 
 unlawful. The conflict is obvious.
 

 
 *445
 
 The practical effect of the provisions of the ordinance is the placing of the harden of proof other than as provided in the statute, which in itself constitutes prejudicial error.
 
 Cleveland Ry. Co.
 
 v. Goldman, 122 Ohio St., 73, 170 N. E., 641. Further, the provision of the ordinance that any speed inconsistent with the absolute safety of others by reason of any cause whatever constitutes
 
 prima facie
 
 evidence of reckless driving fixes a different standard than that of ordinary care, which after all is the measure to be applied under the provisions of Section 12603, General Code.
 
 Swoboda
 
 v. Brown, 129 Ohio St., 512, 196 N. E., 274.
 

 The ordinance was submitted to the jury in both cases and instructions based thereon, particularly in the latter case. Though the ordinance may not be entirely invalid and unenforcible under the principle announced and applied in
 
 City of Piqua
 
 v.
 
 Zimmerlin,
 
 35 Ohio St., 507, yet, in so far as it in effect prescribes a burden of proof at variance with that provided by statute, it is invalid, and its admission and an instruction that it should be applied in the consideration of the case are erroneous. The prejudicial character of the instruction is not obviated by also applying the statutory provision in another portion of the charge. 2 Ohio Jurisprudence, 938, Section 770, and cases cited.
 

 In the general charge in both cases the court, in stating the standard of care required, stated that “it should be the exercise of care and diligence that a cautious person could not avoid.” If understood, the jury would probably have the wrong conception of the standard of care required. The measure is “such care as a person of ordinary prudence would usually exercise under the same or similar circumstances.” Possibly the most favorable comment to be made with reference to the definition given is that it probably was not understood by the jury and hence the correct rule properly stated in other portions of the charge was' fol
 
 *446
 
 lowed and applied -by tbe jury in its deliberations. That instruction would not of itself warrant a reversal of the judgment, but must be considered with other portions to which attention has been directed which erroneously stated the measure of care required.
 

 In the
 
 Klausner case,
 
 the most serious additional claim of error arises out of the closing argument of counsel for the plaintiff, which is urged as such misconduct as would have warranted the withdrawal of a juror or, when a verdict was returned, required the court to set aside the verdict and grant a new trial. "While it is true that great latitude is permitted counsel in arguing to the jury and he is permitted to illustrate and adorn his argument practically without restriction, yet he is required by the obligations he assumes as a member of his profession to avoid making charges against parties, witnesses or counsel which are not warranted by the evidence or any proper inference therefrom and which particularly constitute an unjustified attack upon the professional conduct or integrity of opposing counsel in the case: Without quoting at length from the closing argument of counsel for the plaintiff, it is sufficient to say that language employed in argument to the jury, such as' the following, must find full support and justification in the evidence in order to escape condemnation:
 

 “In making my argument to you, as counsel for defendant did, I am not going
 
 to engage in deceit and hypocrisy
 
 in talking to you. I am not going to hang over this jury and talk to you 'my friends, my friends.’ I am going to talk to this jury this morning in the few minutes I have in a dignified manner * * *. Such hypocrisy as that in a court of justice is' beyond my conception of anything I know of. I am not after anybody. I am after justice in this case; and when you say to this jury take money out of his pocket and from his child you know that is false, because it will take no
 
 *447
 
 money out of his pocket and you know it won’t, and yet you made that statement. That is another hypocrisy on this jury. * * * And the greatest disgrace in this case was bringing that little girl in here. I don’t blame the little girl; I blame the counsel that brought her in. * * * Bringing that little girl in here.
 

 “There isn’t any possible way that she could have saw that car. I just want you to take — they requested it — this ruler with you; I just want you to take this ruler; there is that sun porch she was in, in the picture you can see a little of that porch; now you take that ruler and measure and see how she could see and see fifty feet up here with that wall. She couldn’t possibly see it. That is more hypocrisy in this case. Try to twist the facts for that man who was guilty of the most atrocious conduct that an automobile driver could be guilty of, and stand up before a jury and bring such a sham as that to your attention and then stand up here and call you his friend. * * * I am getting tired of that sort of conduct in the trial of lawsuits. I have practiced law at this bar for thirty years and I have never attempted anything of that kind in trying to put across to 'the jury justice in the face of such things as that. # * Drag a little girl in here to testify to a' thing that she didn’t possibly know! I say again to you jurors, don’t blame the little girl. # * *
 

 “So, ladies and gentlemen of the jury, without any hypocrisy, without any untruth, conscientiously and sincerely and down from the bottom of your hearts render a verdict for that boy that will compensate him for the injury he has sustained; and when you do that you will have no trouble with your conscience. I thank, you.” (Italics ours.)
 

 These remarks were interspersed with objections by counsel for the defendant, followed by motions for the withdrawal of a juror and declaring a mistrial, which were overruled without comment by the court which, it
 
 *448
 
 is urged, was tantamount to the court’s approval. Heat generated by the friction of fierce combat sometimes accounts for rash statements of counsel at the trial table and in argument. Justification in this case is based upon the attitude, action and previous statements in argument of counsel for the defendant and is set forth in plaintiff’s brief as follows:
 

 “In this particular case, counsel relied upon his eloquence, histrionic ability and some flattery to the jury to put across a defense in which but three witnesses testified to circumstances which had little or no probative force. He attempted to place himself in the good graces of the jury by calling them his ‘friends’ which he did as much as twenty-two times in the course of a short argument. To further assist him in attempting to influence the jury, he had defendant’s wife, who was a comely woman, sitting inside of the rail, together with her daughter, a little girl three or four years of age. Their presence was for the purpose of eliciting sympathy and deceiving the jury in making them believe that a verdict against the defendant would be taking money from the defendant’s pocket and from this little girl. Counsel well knew that that was a false statement; that the defendant was not collectible; that his place of business and tools, in fact everything he owned was in his wife’s name. In other words, he was execution-proof and that statement was made not for the purpose of protecting the defendant but protecting the insurance company who was making the defense in this case.
 

 “The remarks of counsel in answer to that statement to the jury did not suggest, as contended by counsel, that there was any insurance in the case but that counsel knew when he made that statement that it was not true; that no money would be taken out of defendant’s pocket and nothing from the little girl. All the statements and things which were said by counsel
 
 *449
 
 for the plaintiff in his closing argument, we believe were justified by the- testimony and counsel for the defendant in misrepresenting and misstating the testimony of plaintiff’s witnesses in the hope that the jury might be influenced and return a verdict for the defendant in a case that exhibited not only gross, but criminal, negligence.”
 

 This hardly justifies the severity of the language employed by counsel for the plaintiff; nor is it warranted by the facts disclosed by the record. It should have been promptly disapproved by the court. In view of the errors previously found and pointed out, it is unnecessary to state whether upon this argument alone the judgment would have been reversed. It is sufficient to state that upon the entire record presented the judgment in each case is reversed.
 

 Judgments reversed.
 

 Weygandt, C. J., Day, Zimmerman, Williams and Gorman, JJ., concur.