The State of Ohio, Appellee, *v*. Hooper, Appellant.

(No. 69-755—Decided February 10, 1971.)

*Mr. George F. Burkhart,* prosecuting attorney, for appellee.

*Mr. Allan Sherry,* for appellant.

O'Neill, C. J. The sheriff of Monroe County was summoned to the scene of a two-car automobile accident in the village of Woodsfield at about 4:15 a. m. on September 19, 1965. The driver of one of the cars was immediately taken to the hospital.

The appellant was the driver of the other car, and

after an on-the-scene investigation and conversation with the appellant, the sheriff arrested the appellant and took him to jail at about 5:00 a. m. Later that day, at approximately 12:30 p. m., the sheriff informed the appellant of his constitutional rights, including his right to remain silent and his right to counsel. The appellant waived his right to counsel and his right to remain silent, and in an oral statement to the sheriff voluntarily admitted his participation in drag racing which preceded the accident.

The next day the sheriff filed an affidavit in the County Court charging the appellant with drag racing in violation of R. C. 4511.251.

The appellant pleaded not guilty. No summons was ever issued, nor was any warrant for the arrest of the appellant ever obtained.

The appellant's first trial resulted in a hung jury. Upon re-trial, the appellant was convicted, which conviction was affirmed by the Court of Appeals. The Supreme Court of Ohio overruled appellant's motion to certify and dismissed his appeal as of right. The United States Supreme Court denied certiorari. Later, the conviction was vacated by the United States District Court in a habeas corpus action. That court ordered that appellant be re-tried within 30 days, or be released. Upon re-trial on November 13, 1968, appellant was convicted and the conviction was affirmed by the Court of Appeals.

Appellant asserts that since the drag racing occurred on September 19, 1965, and the re-trial from which the appellant is appealing did not occur until November 13, 1968, the prosecution is barred by R. C. 1.18, which provides that "No person shall be * * * criminally prosecuted for a misdemeanor, * * * unless such * * * prosecution [is] commenced, within three years from the time such misdemeanor was committed."

The basis of appellant's claim is that no summons was ever issued and no arrest warrant was ever obtained. Appellant contends that it was necessary to have an arrest warrant or a summons issued to *"commence"* the prosecution.

Appellant's position is without merit. His position is based upon the erroneous assumption that an affidavit must be filed *and* an arrest warrant or summons must be issued before a prosecution is *"commenced."*

R. C. 2935.09 provides, in part, that "in order to cause the arrest or prosecution of a person charged with committing an offense in this state, a peace officer * * * shall file with the judge or clerk of a court of record, or with a magistrate, an affidavit charging the offense committed * * *."

Under the provisions of R. C. 2935.09 the filing of an affidavit is sufficient to "cause" the prosecution and thus under R. C. 1.18 is sufficient to "commence" the prosecution of one who is alleged to have committed a misdemeanor, and here the affidavit was filed one day after the commission of such misdemeanor.

Appellant cites R. C. 2935.10 as authority for the proposition that an arrest warrant or a summons must be issued in order to commence a prosecution. However, where the offense charged is a misdemeanor, the issuance of an arrest warrant or a summons is not mandatory. The purpose of the arrest warrant or summons is to satisfy the due-process requirement of notice of the charges filed against an alleged offender. Appellant makes no claim that he did not have notice of the charges against him.

Appellant's second contention is that the oral confession, which he gave in the afternoon following his arrest, and which was admitted as evidence against him at his third trial, was the fruit of an unlawful arrest and, therefore, was inadmissible. This issue involves three questions: Whether the arrest and subsequent detention were unlawful; if so, whether the "exclusionary rule" applied to constitutional violations is applicable to statutory violations of a non-constitutional dimension; and whether, in any event, the confession was a fruit of that unlawful arrest. It is not necessary to decide the first two questions, because even if the arrest were illegal and the exclusionary rule applicable, the subsequent confession was not a fruit of that arrest.

The United States Supreme Court, in *Wong Sun* v. *United States* (1963), 371 U. S. 471, held the exclusionary rule of *Weeks* v. *United States* (1914), 232 U. S. 383 (later applied to state court proceedings in *Mapp* v. *Ohio* [1961], 367 U. S. 643), applicable to verbal evidence, such as confessions, which are the fruits of illegal searches and seizures. In *Wong Sun*, a federal narcotics agent, posing as a customer, presented himself at the laundry of one Toy at 6:00 a. m. When Toy refused him entrance because of the unusual hour the agent identified himself as such, and, with the aid of other agents, broke into the laundry without a warrant. They chased Toy to a back room where his family was sleeping and placed him under arrest. After Toy was handcuffed, he was accused by the agents of selling narcotics to one Hom Way. Under these conditions, Toy replied that he had not made any such sales, but he understood that a Johnny Yee was making such sales. While Toy intended his statement to be exculpatory, the subsequent investigation of Yee, based on the statement, uncovered the evidence which was used to convict Toy of a violation of the federal narcotics laws.

Toy contended that the evidence used to convict him was a fruit of his unlawful arrest because it was the direct result of his statement which he contended was a fruit of his arrest. The court was thereby faced squarely with the issue of whether a verbal statement, like physical evidence, could be the fruit of an unconstitutional search and seizure. Answering that question in the affirmative, the court stated the following:

"The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in *Silverman* v. *United States,* 365 U. S. 505, that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.' * * * Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officer's action in the present case is no less the 'fruit' of official illegal-

ity than the more common tangible fruits of the unwarranted intrusion. * * * Nor do the policies underlying the exclusionary rule invite any logical distinction between physical and verbal evidence. Either in terms of deterring lawless conduct by federal officers, *Rea* v. *United States,* 350 U. S. 214, or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained, *Elkins* v. *United States*, 364 U. S. 206, the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction.''

In this context only those confessions which are the fruit of an illegal arrest are inadmissible.

A confession is the fruit of an arrest only where there is a causal connection between the two. *Commonwealth* v. *Bishop* (1967), 425 Pa. 175. In *Wong Sun*, the court stated that there are at least two instances in which the causal connection between the two is broken. The first occurs where ''the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.' '' The second occurs when the confession is the result of an ''intervening independent act of a free will.''

The confession in this case falls into the latter category. Appellant was informed of his constitutional rights prior to the time he confessed. Furthermore, appellant has made no contention that his confession was not voluntary, nor is there anything in the record which would support such a contention. Therefore, even if appellant's arrest was unlawful, his subsequent confession was an ''intervening independent act of a free will'' and not a fruit of the arrest.

A number of other jurisdictions which have recognized the rule that a verbal confession, like physical evidence, may be a fruit of an unlawful arrest have held that, under the facts of a specific case, a confession made subsequent to an illegal arrest or during an unlawful detention was not *so directly a result of the arrest or detention* as to be a fruit thereof. See *United States* v. *McGavic* (1964), 337 F. 2d 317; *Hollingsworth* v. *United States* (1963), 321 F. 2d 342; *State* v. *Kitashiro* (1964), 48 Haw. 204; *Prescoe* v. *State* (1962), 231 Md. 486; *Commonwealth* v. *Bishop,*

*supra* (425 Pa. 175); *State* v. *Keating* (1963), 61 Wash. 2d 452; *People* v. *Freeland* (1963), 218 Cal. App. 2d 199. Contra, see: *Bynum* v. *United States* (1959), 262 F. 2d 465, followed in *State* v. *Thompson* (1965), 1 Ohio App. 2d 533.

Appellant finally contends that he should not have the costs of all three of his trials and subsequent appeals taxed against him.

R. C. 2953.07 provides, with regard to appeals in criminal cases:

"If the judgment is reversed the appellant shall recover from the appellee all court costs incurred to secure such reversal * * *."

Standing alone, that provision would indicate that, at the time the United States District Court vacated appellant's conviction, all costs of the prosecution to that time should have been taxed to the state. However, R. C. 2949.- 20 provides for the collection of costs from the state only in "any case of final judgment of reversal as provided in Section 2953.07 of the Revised Code, whenever the state of Ohio is defendant on appeal." That language indicates that the General Assembly intended the judgments of reversal alluded to in R. C. 2953.07 to be *final* judgments of reversal. which would not include the order of the United States District Court vacating the first conviction and ordering the re-trial of appellant. The General Assembly has burdened a defendant with the possibility of paying extra for a conviction untainted by reversible error.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

Schneider, Herbert, Duncan and Leach, JJ., concur. Corrigan, J., dissents. Stern, J., not participating.

Corrigan, J., dissenting. On September 19, 1965, at approximately 4:30 a. m., James William Hooper, the de- fendant, was arrested by the sheriff of Monroe County fol-

lowing an automobile accident in the village of Woodsfield. The sheriff had been summoned to the scene around 4:15 a. m., after an accident had occurred. The accident, according to the testimony, involved two automobiles.

The sheriff did not see the accident, nor did he view the defendant violating any law of this state; neither did the sheriff find the defendant violating a law of this state when he arrived at the site of the accident.

The sheriff's testimony was that, when he arrested defendant at the scene of the accident and had him taken to the county jail at around 5:00 a. m., he did not tell defendant why he was being arrested, but that he (the sheriff) was arresting him for "investigation, at that time." The sheriff testified further that he did not have a warrant at the time the arrest was made. His testimony also was that at the scene of the accident he had in mind that he was going to charge defendant with drag racing.

After arrival at the jail the sheriff put the defendant in a cell. He testified that he next saw him: "Around— little after noon that same day." At the latter time, some seven hours subsequent to being incarcerated, the defendant made a lengthy oral statement to the sheriff. This culpatory statement was testified to, over objection, in the trial before a jury.

On the following morning, September 20, 1965, the sheriff filed an affidavit in the County Court of Monroe County charging defendant with a violation of R. C. 4511.251 (drag racing). Defendant was subsequently convicted by a jury of this charge.

The authority of a sheriff to arrest for a misdemeanor is clearly circumscribed in R. C. 2935.03. On the date of the alleged offense, that section, in pertinent part, provided:

"Officer may arrest on view.

"A sheriff, deputy sheriff, marshal, deputy marshal, watchman, or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained."

Patently, from the record before us, the sheriff did

not have authority to arrest defendant without a warrant. Therefore, the arrest and subsequent detention, until an affidavit was filed the next day, were unlawful and a denial of defendant's rights of due process under the United States Constitution and the Constitution of the state of Ohio. During that period of detention, defendant made certain oral admissions to the sheriff which were later admitted in evidence at the trial, over objection, to help convict him.

It is my carefully considered view that, from the record before this court, those oral statements, actually in the nature of a confession, were the fruits of an illegal arrest. I cannot conceive that, by any reasonable exercise of judicial imagination, such oral statements could be considered the result of an "intervening independent act of a free will." The sheriff testified, on recross-examination, that he filed a serious charge against this defendant; that he knew it was a very serious charge; and that as a matter of fact he told defendant that there was a case in Stark County where the person had been charged with murder, where someone had been killed. It seems to this member of the court that, with such disheartening and worrisome information imparted to defendant, under the circumstances he would be sounding for a friendly ear to try to convey a spirit of cooperation in the hope of merciful treatment.

It is my judgment that on the record the exclusionary rule should have been applied to the oral statement used in the trial. It is also my judgment that the sheriff's act in making the arrest was clearly violative of the provision of R. C. 2935.03 that the person arrested without a warrant be "found violating" the law and contravened appellant's rights of due process under the United States Constitution and the Constitution of the state of Ohio. Therefore, I would reverse the judgment of conviction and discharge this defendant.