THE STATE OF OHIO, APPELLEE, *v.* CHASE, APPELLANT.

[Cite as State v. Chase (1978), 55 Ohio St. 2d 237.]

(No. 76-1254—Decided August 2, 1978.)

238

240

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Allan C. Travis,* for appellee.

*Messrs. Nemeth & Gantz* and *Mr. Curtis F. Gantz,* for appellant.

O'NEILL, C. J. The trial judge instructed the jury as follows: "In order to establish a defense of insanity the accused must establish that a disease or other defect of his mind had so impaired his reason that at the time of the criminal act with which he is charged either he did not know that such act was wrong or he did not have the ability to refrain from doing that act."

This charge was erroneous under R. C. 2901.05(A). *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, 351 N. E. 2d 88; *State* v. *Meyer,* decided with *State* v. *Humphries* (1977), 51 Ohio St. 2d 95, 364 N. E. 2d 1354.[1] Under the statute, a defendant who pleads not guilty by reason of insanity has the burden of going forward with evidence of a nature and quality sufficient to raise the defense before the jury. Under the statute, the correct rule is that once the defendant has presented evidence of a nature and quality sufficient to raise the defense before the jury, the jury must consider all of the evidence in the case from whatever source, including all of the evidence as to the affirmative defense; and if they entertain any reasonable doubt of the defendant's guilt, they must acquit. If they entertain no reasonable doubt of the defendant's guilt, they must convict.[2]

---

[1] The trial of the instant cause occurred before *State* v. *Robinson, supra,* and *State* v. *Humphries, supra,* were decided by the Supreme Court.

[2] Cf. *State* v. *Norman* (1921), 103 Ohio St. 541, 134 N. E. 474, recognizing at page 544 that a defendant who offers evidence of alibi has

The instruction in the present case suggested that the jury could not acquit the defendant unless he actually "established" the defense in the jury's mind by some unspecified quantum of proof. Thus the instruction imposed on the defendant a greater burden of proof than the law allows, and it was, therefore, prejudicial error. *State* v. *Hauser* (1920), 101 Ohio St. 404, 407, 131 N. E. 66, 67; *Kelch* v. *State* (1896), 55 Ohio St. 146, 45 N. E. 6. See, also, the civil cases of *Schwartz* v. *Badila* (1938), 133 Ohio St. 441, 14 N. E. 2d 609; *Indus. Comm.* v. *Ripke* (1935), 129 Ohio St. 649, 196 N. E. 640; *Cleveland Ry. Co.* v. *Goldman* (1930), 122 Ohio St. 73, 170 N. E. 641; *Montanari* v. *Haworth* (1923), 108 Ohio St. 8, 140 N. E. 319.

The jury propounded seven questions in their attempt to understand the court's charge as to the burden of proof on the affirmative defense. The court's answers to those questions compounded the error in the charge. In answer to one question, the court stated that the defendant had no burden of proof regarding insanity. In answer to another question the court said that the state had no such burden. These two answers are incomplete and, thus, misleading. It is generally true that the burden of initial production on a given issue can be assigned to one party or the other. But once an issue is properly before the trier of fact, the crucial question is no longer *which party has the burden of proof,* but rather *the standard by which the trier of fact is permitted to draw inferences from the evidence as a whole.* As Wigmore says, "After * * * the jury has retired to reach and frame its decision, a question arises as to the *quality,* or *degree, of its persuasion.* Here, it is to be noticed, we are no longer concerned with the incidence of the duty or burden of proof as between the *parties* to the cause, but merely with the *tribunal's own duty* and conduct as to its *standard of persuasion.*" (Emphasis *sic.*) 9 Wigmore on Evidence (3 Ed.), 316, Section 2497. In the

---

a "right of acquittal" if the "alibi, in connection with all the evidence in the case * * * raises a reasonable doubt as to the guilt of the accused."

present case, the court's answers to the jury's questions came close to explaining this, but they omitted the vital information which the jury needed in order to decide on the affirmative defense. They omitted any explanation of the standard by which the jury must decide that issue. The court did not explain that when the trier of fact has considered all of the evidence, including all of the evidence as to the affirmative defense, the trier of fact must acquit the defendant if the trier of fact entertains a reasonable doubt as to the defendant's guilt, or if the trier of the fact entertains no reasonable doubt as to the defendant's guilt, the trier of fact must convict the defendant. For these reasons the judgment must be reversed.

The appellant also argues that the verdict was against the manifest weight of the evidence because the defense evidence on the issue of insanity was "substantial," "credible," and "essentially unimpeached and unrebutted." Actually, however, the state offered a rebuttal witness who questioned the diagnosis advanced by the psychiatrist who testified for the defense. The evidence as a whole was such that reasonable jurors, properly instructed, could have disagreed as to the appellant's sanity. Thus, the issue of insanity was a question for the jury, and this court can not now hold that the defendant was entitled to acquittal as a matter of law on the evidence presented on the question of insanity at the time of commission of the crime.

The other important point in this case is whether the self-incriminating statements which the appellant made under interrogation by the police were properly admitted in evidence.

The first question in this regard is whether the appellant's statements should have been excluded under *Miranda* v. *Arizona* (1966), 384 U. S. 436. *Miranda* applies to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, supra,* at 444. As the statement of facts shows, there can be no real disagreement that the appellant's freedom

of action was restricted significantly at all times after his first encounter with Detective Lower in his apartment. Lower asked the appellant to wear certain clothes, told him not to take his car keys with him, and later refused to let his friend speak to him on the telephone, even though he was in the room when one of the calls came through. The appellant was transported twice in police vehicles, and from about 10:45 a. m. until just after he confessed, late in the evening, he saw no one except police personnel. The state insists that the appellant was free to leave the custody of the police at any time, but this fact was never communicated to the appellant.

The record is equally clear, though, that the police formally complied with the *Miranda* requirements. The appellant twice heard the warnings and twice waived, in writing, his right to remain silent and his right to have an attorney present. Moreover, the appellant at least once, and perhaps twice, declined Detective Lower's offer to let him speak to someone besides Lower, such as an attorney.

Nevertheless, a waiver of the right to counsel is ineffective unless made knowingly and intelligently. See *Argersinger* v. *Hamlin* (1972), 407 U. S. 25; *State* v. *Wellman* (1974), 37 Ohio St. 2d 162, 309 N. E. 2d 915. The appellant argues that his waivers were no longer knowing and intelligent after the police concealed the fact that two attorneys had been to the station and had asked to see the appellant. This was one of the grounds on which the trial court held the appellant's statements inadmissible. The Court of Appeals, however, properly reversed on this point. The appellant never asked to see any attorney, let alone the particular ones who came to see him, and when directly asked whether he wanted to talk to a lawyer, he answered "no." When he was asked which relatives should be notified of the decedents' deaths, the appellant gave only the names of relatives and did not ask that a lawyer be notified. Furthermore, the only connection between the appellant and the two lawyers who asked to see him was

that one of them had done legal work for the deceased father. In their conversation with Chief Abbott, neither attorney asserted that he represented the appellant.

The present case differs from *Commonwealth* v. *McKenna* (1969), 355 Mass. 313, 244 N. E. 2d 560, reaching the opposite result where the two lawyers who demanded to see the suspects during interrogation were the same attorneys whom the suspects had earlier asked to have notified; and *Commonwealth* v. *Mahnke* (Mass. 1975), 335 N. E. 2d 660, where the lawyer who asked to see his client during interrogation was said to be "defendant's attorney."

However, another issue remains to be considered.

Long before *Miranda,* it was well established that a confession, to be admissible, must be voluntary. As was said in *Rufer* v. *State* (1874), 25 Ohio St. 464, 470, "Whilst voluntary confessions are always admissible against a prisoner on trial, it is well settled that confessions of guilt made through the influence of hopes or fears, induced by promises or threats of temporal benefit or disadvantage, are wholly inadmissible." This rule is now a matter of federal constitutional law. *Rogers* v. *Richmond* (1961), 365 U. S. 534. *Miranda,* of course, laid down minimum requirements which the police must observe in conducting custodial interrogations. But, as this court has held, the question of whether the accused's statements were in fact voluntary is separate from the quesion of compliance with *Miranda*. *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, 277 N. E. 2d 435; see, also, *State* v. *Hooper* (1971), 25 Ohio St. 2d 59, 63, 267 N. E. 2d 285. Moreover, formal compliance with the requirements of *Miranda* does not preclude proof that the statements themselves were involuntary. See *Kassow, supra,* at page 145.

In this cause, the trial court's original decision to exclude the statements in question rested on three independent grounds, one of which was that the appellant's statements were involuntary. The factual question facing the trial court on the motion to suppress was "whether the

defendant's will was overborne at the time he confessed,'' *Lynumn* v. *Illinois* (1963), 372 U. S. 528, 534, or in other terms, whether his confession was ''made freely, voluntarily, and without compulsion or inducement of any sort'' (*Wilson* v. *United States* [1896], 162 U. S. 613, 623). See *Haynes* v. *Washington* (1963), 373 U. S. 503.

The appellant made no self-incriminating statements until he was taken to the State Highway Patrol headquarters, where the two examiners told him repeatedly not to take the test if he had anything to hide. They also assured the appellant repeatedly that they were only interested in his welfare, and told him further that if he would ''talk'' to them, they would get him ''help.'' To a 19-year-old suspect with no prior experience with the police, except for a minor trespassing charge, this might well have seemed like an offer of leniency. Under the rule that '' ' a confession * * * must not be * * * obtained by any direct or implied promise, however slight,' '' *Bram* v. *United States* (1897), 168 U. S. 532, 542, the trial judge, in the opinion of the writer, could properly hold that appellant's subsequent statements were inadmissible.

Finally, at the crucial moment when the interrogators confronted the appellant with the polygraph results, they refused three times to let him speak to his close friend, Kay Callendine, unless he would first explain his answers to the polygraph examination. In the opinion of the writer, the trial court could reasonably find that the ensuing statements were involuntary, as in *Haynes* v. *Washington, supra*. There, the United States Supreme Court held the suspect's confession involuntary partly because it was given after the police had denied his requests to speak with his wife. Although *Haynes* included additional facts that doubtless made it somewhat easier to decide than the present cause, the investigatory technique used here is the same as that used in *Haynes*. It was an offer for an exchange—access to a person close to the suspect, in return for further statements.

It is well settled that the question of whether to ad-

mit or suppress confessions claimed to be involuntary depends on "all of the attendant circumstances." *Haynes, supra,* at page 513.

As this court said in *State* v. *Cowans* (1967), 10 Ohio St. 2d 96, 101, 227 N. E. 2d 201, "Whether a confession is voluntary or not is not subject to mathematical calculation. Rather a court must look at all the attendant circumstances to determine the psychological impact of the coercive influences on the suspect's ability to make a free and rational choice."

It is the opinion of the writer that the attendant circumstances in relation to appellant's statements show that the statements were involuntary and thus inadmissible. However, a majority of the court is of the opinion that appellant's statements were not involuntary and hence were admissible. Therefore, the judgment of the Court of Appeals with respect to its holding that appellant's statements were admissible is affirmed.

The judgment of the Court of Appeals is reversed in part and affirmed in part and the cause is remanded to the trial court for a new trial.

*Judgment accordingly.*

HERBERT, W. BROWN and SWEENEY, JJ., concur.
CELEBREZZE, P. BROWN and LOCHER, JJ., dissent.

PAUL W. BROWN, J., dissenting. The majority opinion quotes the charge by the trial court and characterizes its language as erroneous under R. C. 2901.05(A), under *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, and under *State* v. *Meyer* decided with *State* v. *Humphries* (1977), 51 Ohio St. 2d 95. This argument appears to construe the term "establish," used in the quoted portion of the charge, as placing a burden of proof upon the defendant. I disagree.

The change from Ohio's traditional rule that the defendant had the burden of proving self-defense by a pre-

ponderance of the evidence was recognized in *State* v. *Robinson, supra,* as having been dictated by R. C. 2901.05 (A).

Justice Stern in that opinion persuaded me that the legislative intent, as drawn from the evolution of that statute, was to place the burden beyond a reasonable doubt upon the state as to every element of the offense, to place upon the accused the burden of going forward with the evidence to *establish* an affirmative defense and further that only if the evidence adduced by the defendant to *establish*[3] his defense when considered with all other evidence is sufficient to cast a reasonable doubt on the question of his guilt should the defendant be acquitted.

In *State* v. *Robinson, supra,* at pages 112-113, Justice Stern quoted the following from *State* v. *Millett* (Me. 1971). 273 A. 2d 504, 508:

" ' * * * When such evidence is forthcoming the trial court must first, viewing that evidence in the light most favorable to the defendant, determine whether or not it is adequate to raise the self-defense issue, and, if believed, would under the legal tests applied to a claim of self-defense permit a reasonable doubt as to guilt, stemming from that claim, to arise. Having concluded as a matter of law that the self-defense issue is thus properly tendered, the trial court need only instruct the jury as to the elements of self-defense. *He will have no occasion to speak of burden of proof other than to explain the State's burden of proving guilt beyond a reasonable doubt.*' " (Emphasis added.)

This the trial court did in the instant cause. No charge was given upon burden of proof other than that the prosecution had the duty throughout the trial to prove its case beyond a reasonable doubt. The trial court did require the defendant to go forward with the evidence to establish an affirmative defense. The word *establish* as used in the trial court's instruction is directly from the Techni-

[3]See footnote 10, *State* v. *Robinson, supra,* at page 110.

cal Committee comments to the proposed Ohio Criminal Code as footnoted in *State* v. *Robinson, supra.*

The charge correctly required evidence of insanity which if believed showed the defendant to be unable to tell right from wrong or to cling to the right and avoid the wrong. The defendant, in furtherance of that objective, presented evidence designed to fulfill his obligation. The jury was not persuaded and no prejudicial error occurred by reason of the instructions relative to the issue of insanity.

I would affirm the conviction.

CELEBREZZE, J., concurs in the foregoing dissenting opinion.

LOCHER, J., dissenting. I must respectfully dissent for the reasons I have previously outlined in my dissent in *State* v. *Meyer,* decided together with *State* v. *Humphries* (1977), 51 Ohio St. 2d 95.