OPINION
{¶ 1} Defendant, Robert Marks, appeals from his conviction for possession of cocaine, which was entered on Marks' plea of no contest after the trial court overruled his motion to suppress evidence. We find no basis to reverse Marks' conviction on the error assigned. Accordingly, Marks' assignments of error will be overruled and his conviction affirmed.
 {¶ 2} On January 11, 2002, Agent Pete Garcia of the DEA informed a local narcotics detective, Jesse Wimberly, that information received from Garcia's informant indicated that Defendant would soon travel from New Mexico to the Dayton area, and that Defendant had arranged for a package containing drugs to be delivered to him in Dayton via FedEx. After a FedEx envelope addressed to Defendant arrived at the Fed Ex offices in Miamisburg, Deputy Troy Bodine brought his narcotics detection dog there to conduct a canine sniff of the envelope. The dog alerted to the envelope indicating that the envelope contained drugs. Police then obtained a search warrant and opened the envelope. They discovered approximately 119 grams of powder cocaine inside.
 {¶ 3} Defendant had been encouraged by Garcia's informant to reserve a room at the Holiday Inn at 31 Prestige Plaza in Miamisburg for delivery of the envelope, which he did. Defendant advised the front desk clerk when he made his reservation that he was expecting a FedEx delivery at the hotel. After Defendant checked into the hotel on January 12, 2002, he made several inquiries of the front desk about whether his FedEx package had yet arrived.
 {¶ 4} Police had obtained an anticipatory search warrant that authorized them to search Defendant's person and his hotel room after he accepted delivery of the FedEx package and took it into his room. A beacon transmitter was placed inside the FedEx package that would emit a signal and alert waiting police when the package was opened. If no signal was received, the officers could then enter the Defendant's room after waiting a reasonable time.
 {¶ 5} An undercover detective posing as a front desk clerk at the Holiday Inn called Defendant and told him his package had arrived. Defendant went to the front desk, retrieved his FedEx envelope, and took it back to his room. Drug task force officers waited about fifteen to twenty minutes for the beacon transmitter signal to alert them that the package had been opened. When that didn't happen, the task force executed their search warrant by entering Defendant's room. They found Defendant standing between the beds and the FedEx envelope on the floor between Defendant's feet.
 {¶ 6} Defendant was arrested for possession of cocaine and was given Miranda warnings. He waived his rights, and told police he was at the hotel to meet his friend, Bill Perry, and to sell him the cocaine. Defendant refused to cooperate with police when they asked him to cooperate by completing the sale of cocaine to Perry.
 {¶ 7} Defendant was indicted on January 16, 2002, on one count of possession of cocaine, over one hundred grams but less than five hundred grams. R.C. 2925.11(A). Defendant filed motions on February 26, 2002, and March 12, 2002, to suppress the evidence and statements he made to police. Following a hearing the trial court overruled Defendant's motion to suppress. Defendant subsequently entered a plea of no contest to the charge and was found guilty. The trial court sentenced Defendant to a two year term of imprisonment and imposed a mandatory fine of $7,500.
 {¶ 8} Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 9} "a Search And Seizure Cannot Be Made Pursuant To An Anticipatory Warrant Unless And Until The Specifically Stated Triggering Event Occurs At The Place Specified In The Warrant."
 {¶ 10} Defendant argues that police lacked probable cause to search his hotel room or execute the anticipatory search warrant in this case because the triggering event necessary to the existence of that probable cause, a signal from the beacon transmitter indicating that a Defendant had opened the FedEx envelope containing drugs, never occurred.
 {¶ 11} We note that the face of the search warrant authorizes officers to search Defendant's person and the room at the Holiday Inn. It is not conditioned on any anticipated event. If any event is anticipated, or assumed, it is that the Defendant would be in possession of the envelope while in the room.
 {¶ 12} The affidavit for the warrant proposes the event officers anticipated, the signal from the beacon transmitter, would occur when Defendant opened the envelope. The affidavit also proposed that officers would enter the room after waiting a reasonable time if the signal wasn't received. We do not find that the authority which the warrant confers is necessarily conditioned on the happening of either matter. However, we shall address the error assigned as though the warrant did that because of the terms of the underlying affidavit, which if adopted by the reference made it an "anticipatory warrant."
 {¶ 13} In determining the sufficiency of probable cause submitted in an affidavit in support of a search warrant, the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates (1983), 462 U.S. 213; State v.George (1989), 45 Ohio St.3d 325. The task of a reviewing court in reviewing the sufficiency of probable cause in a search warrant is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Id. Great deference should be accorded to the magistrate's probable cause determination. Id.
 {¶ 14} In State v. Nathan (November 16, 2001), Montgomery App. No. 18911, 2001-Ohio-1826, this court discussed anticipatory search warrants:
 {¶ 15} "Consistent with the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, search warrants must be based on averments that establish probable cause to believe that contraband or evidence of a crime will be found at the particular place to be searched. Typically, those averments portray facts which establish that the evidence sought is presently at the location concerned. Whether the averments are factually and legally sufficient for those purposes are issues which must be determined by a neutral and detached magistrate. Berger v. New York (1967), 388 U.S. 41.
 {¶ 16} "When the evidence to be seized is not yet at the place to be searched, probable cause to presently search cannot be said to exist. Nevertheless, when the facts presented to the issuing magistrate demonstrate that the evidence to be seized is on a sure and irreversible course toward the place to be searched, an "anticipatory warrant" may issue on a showing of probable cause that at some future time, though not presently, evidence of a crime will be located at a specific place to be searched. State v. Folk (1991), 74 Ohio App.3d 468.
 {¶ 17} "The rationale for allowing anticipatory search warrants, which is founded on the judicial preference for searches conducted pursuant to a warrant, is that it may be reasonable for a magistrate to conclude that specific, objectively evident events that are almost certain to occur in the near future will be sufficient to create probable cause, and therefore demonstrate probable cause to believe that the evidence to be seized will be located at the specific place to be searched when the authorized search occurs. Folk, supra.
 {¶ 18} "Anticipatory search warrants are often issued where the post office or a freight delivery company are to make a `controlled delivery' of a package containing contraband within a few hours to a specific address, and responsible officials so advise the magistrate.Folk, supra. Under those circumstances, the facts presented to the magistrate establish probable cause to believe that when delivery is made the evidence to be seized will be in the place to be searched when that search occurs. Thus, there is no probable cause defect. Folk, supra.
 {¶ 19} "Anticipatory search warrants typically involve very specific, objectively determined events which must occur before probable cause to search exists and the warrant can be executed by police officers. This serves to limit the discretion of the officers executing the warrant. In the case of a typical "controlled delivery," the triggering event is simply delivery of the package containing contraband to the specific place to be searched and its acceptance by some person located there. This is an objective fact, easily verified, which requires no independent analysis by the officers executing the warrant of the meaning or significance of the delivery." Opinion at 3-4.
 {¶ 20} Defendant argues that the authority to enter his hotel room and search and seize the FedEx envelope containing cocaine after he took it inside which the warrant conferred upon the officers was not triggered because the anticipated event on which that authority was conditioned, Defendant's opening of that FedEx envelope, had not occurred when the officers entered the room.
 {¶ 21} Neither Defendant's February 26, 2000, motion to suppress, nor his March 12, 2002, amended motion to suppress, made this particular contention in support of the motion. Neither did the trial court address this issue, much less decide it. Accordingly, this issue is raised for the first time on appeal, and therefore is not properly before us. Statev. Cantrell (July 5, 1996), Montgomery App. No. 14997. Even if it was, we would reject it.
 {¶ 22} Defendant's argument that his opening the FedEx envelope was the triggering event necessary to provide probable cause for the search of his hotel room and permit execution of the anticipatory search warrant is incorrect. An examination of that warrant, particularly paragraphs G, H, and I of the affidavit in support of the warrant, reveals that it authorized the officers to enter Defendant's room to retrieve the FedEx envelope containing cocaine that Defendant had taken inside upon the happening of either one of two events; activation of the beacon transmitter inside the envelope, or, lacking that, passage of a reasonable amount of time after Defendant took the envelope into the room. The officers in this case acted upon the latter, and Defendant makes no claim that the fifteen or twenty minutes the officers waited before entering his room was not reasonable.
 {¶ 23} The affidavit submitted in support of this anticipatory search warrant provided the issuing magistrate with a substantial basis from which to conclude that there was a fair probability that contraband would be found inside Defendant's hotel room or on his person at the time the search occurred. Probable cause clearly existed at the time the officers executed the search warrant and entered Defendant's room. Moreover, after controlled delivery of the FedEx envelope containing cocaine to Defendant was completed and he was observed taking that envelope inside his room, probable cause existed to make a warrantless arrest of Defendant. State v. Piggott (July 26, 2002), Montgomery App. No. 18962, 2002-Ohio-3810. The trial court did not err in overruling Defendant's motion to suppress the evidence.
 {¶ 24} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 25} "An Anticipatory Warrant Cannot Be Used To Permit The Obtaining Of Unmirandized Statements Of Suspect Who Is In Custody."
 {¶ 26} Defendant argues that the trial court should have suppressed the incriminating statements he made to police because his arrest subjected him to custodial interrogation, and he was questioned by police before they advised him of his constitutional rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436.
 {¶ 27} The police officers who testified at the suppression hearing, including Det. Wimberly, stated that Defendant was advised of his Miranda rights before being questioned, that he indicated he understood those rights, and that he voluntarily waived his rights and agreed to speak with police. Defendant, on the other hand, testified that police questioned him for about ten minutes before they advised him of hisMiranda rights. The trial court found that the testimony of Det. Wimberly and Det. Williams was more credible than Defendant's testimony, and that Defendant was advised of his Miranda rights before being questioned by police.
 {¶ 28} In a motion to suppress evidence the trial court assumes the role of the trier of facts and is in the best position to evaluate the credibility of the witnesses and determine what weight to give to their testimony. State v. Retherford (1994), 93 Ohio App.3d 586. A court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting those facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether those facts meet the appropriate legal standard. Id.
 {¶ 29} Here, there is competent, credible evidence in the record that supports the trial court's factual finding that the officers advised Defendant of his Miranda rights and he waived those rights before being questioned by police. Accordingly, the trial court did not err in overruling Defendant's motion to suppress his statements.
 {¶ 30} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 31} "In Determining Whether A Confession Is Involuntary, The Court Should Utilize The Totality Of The Circumstances Test."
 {¶ 32} Defendant argues that the trial court should have suppressed his confession regardless of the timeliness of the Miranda
warnings, because it was rendered involuntary by coercive police conduct threats of immediate incarceration, which, coupled with false promises of leniency, induced him to confess; and statements to Defendant that he could likely help himself if he cooperated with police and agreed to complete the sale of the cocaine he possessed to his friend, Bill Perry, who was the intended buyer.
 {¶ 33} In State v. Jackson (September 6, 2002), Greene App. No. 02CA0001, 2002-Ohio-4680, we discussed the law applicable to involuntary confessions. We quote at length from that decision here:
 {¶ 34} "The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee that no person in any criminal case shall be compelled to be a witness against himself. The concern that animated the framers to adopt the Fifth Amendment was that coerced confessions are inherently untrustworthy. Dickerson v.United States (2000), 530 U.S. 428, 120 S.Ct. 2326. "A free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt . . . but a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape . . . that no credit ought to be given it." Id. at 433.
 {¶ 35} "A suspect may waive his constitutional right against self-incrimination, provided that waiver is voluntary. A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515; Statev. Otte, 74 Ohio St.3d 555, 1996-Ohio-108.
 {¶ 36} "The issues of whether a confession is voluntary, and whether a suspect has been subjected to custodial interrogation so as to require Miranda warnings, are analytically separate issues. Dickerson,supra; State v. Chase (1978), 55 Ohio St.2d 237. The due process clause continues to require an inquiry, separate from custody considerations, concerning whether a defendant's will was overborne by the circumstances surrounding the giving of his confession. Dickerson, at 434. This due process test takes into consideration the totality of all the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation. Id. Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements. State v. Edwards (1976), 49 Ohio St.2d 31.
 {¶ 37} "Even when Miranda warnings are not required, a confession may be involuntary and subject to exclusion if on the totality of the circumstances the defendant's will was overborne by the circumstances surrounding the giving of that confession. Dickerson, supra, at 434. If all of the attendant circumstances indicate that the confession was coerced or compelled, it cannot be used to convict the defendant. That determination depends upon a weighing of the pressure to confess against the power of resistance of the person confessing. Id.
 {¶ 38} "In support of his claim that his confession was involuntary because police improperly induced his confession by false promises of leniency regarding the possibility of probation, Defendant relies upon State v. Arrington (1984), 14 Ohio App.3d 111.
 {¶ 39} "In Arrington, officers told an accused, who was one of two co-defendants indicted for aggravated murder, that "if you weren't the one who pulled the trigger * * * it can be probational." Concerning the possibility of additional charges, they told him: "You can talk to us * * * you don't have to worry about no (sic) additional charges." The trial court suppressed the statements as involuntary. The court of appeals agreed, holding:
 {¶ 40} "Where an accused's decision to speak was motivated by police officers' statements constituting `direct or indirect promises' of leniency or benefit and other representations regarding the possibility of probation which were misstatements of the law, his incriminating statements, not being freely self-determined, were improperly induced, involuntary and inadmissible as a matter of law." Id. at syllabus.
 {¶ 41} "* * *
 {¶ 42} "Arrington relied on a California case, People v. Flores
(1983), 144 Cal.App.3d 459, 192 Cal.Rptr. 772, which makes an important distinction concerning promises made by police that induce a suspect's incriminating statement. The Flores court stated:
 {¶ 43} "The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. * * *
 {¶ 44} "When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear. (Emphasis added.)" (Quoting People v. Hill [1967],66 Cal.2d 536, 549, 58 Cal.Rptr. 340 [348], 426 P.2d 908 [916].)Arrington, supra, at 115, 470 N.E.2d at 216.
 {¶ 45} "The Flores distinction corresponds to the policy underlying the Fifth Amendment prohibition against the use of coerced confessions that the United States Supreme Court reiterated inDickerson, supra. When a confession is forced from the mind by the flattery of hope or by the torture of fear, it is unreliable and no credit ought to be given to it. Promises or suggestions of leniency in exchange for waiving the Fifth Amendment privilege create a flattery of hope, which is made even more powerful by the torture of fear that accompanying threats of punishment induce in the mind of the accused.Petitjean, supra."
 {¶ 46} The evidence demonstrates that Defendant Marks was forty-seven years old at the time of this offense and had a criminal history that included previous drug offenses. Defendant's interview with police lasted one hour. There is no evidence of any physical deprivation or mistreatment. Indeed, five minutes after the interview began police removed Defendant's handcuffs because he said he was uncomfortable.
 {¶ 47} Clearly, the officers hoped that Defendant would cooperate with them and complete the sale of this cocaine to Bill Perry, Defendant's intended buyer. The officers asked Defendant if he would be willing to do that, and they told him that he could likely help himself by cooperating with them in that manner. However, Defendant was not coerced in that regard, and no specific promises were made to him regarding any particular penalties or forms of leniency he might receive if he did cooperate in that way.
 {¶ 48} Defendant admitted that Det. Wimberly told him that no matter whether he cooperated or he didn't, he was going to go to jail that day, and that any deal that would be made would depend upon what the prosecutor, not the police, decided. Defendant refused to reveal any information about Perry or complete the sale of cocaine to him.
 {¶ 49} The trial court concluded that there was no coercive conduct on the part of the police that induced Defendant's statements, and no false promises of leniency or other statements by police that operated to overbear Defendant's will so as to critically impair his capacity for self-determination. We agree. The totality of the circumstances surrounding Defendant's confession do not demonstrate promises of leniency expressly conditioned upon waiving theFifth Amendment privilege that create a flattery of hope, made even more powerful by the torture of fear that accompanies threats of punishment, which so undermined Defendant's capacity for self-determination that his decision to confess was fatally impaired. Jackson, supra. Defendant's confession was not involuntary, and the trial court did not err in refusing to suppress it.
 {¶ 50} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and WOLFF, J., concur.