The STATE of Ohio, Appellant,

v.

WRIGHT, Appellee.

[Cite as *State v. Wright* (1990), 67 Ohio App.3d 574.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56906.

Decided May 7, 1990.

*John T. Corrigan,* Prosecuting Attorney, and *Nancy McDonnell,* for appellant.

*George MacDonald,* for appellee.

———

ANN MCMANAMON, Judge.

The state of Ohio appeals the suppression of a tape-recorded statement defendant George Wright gave to arson investigators. In two assignments of error, the state posits police did not violate Wright's constitutional rights to silence and to counsel and that the court erroneously permitted defense attorneys to testify at the suppression hearing. We find the court faithfully discharged its duty.

On December 17, 1987, nineteen-year-old George Wright appeared at the scene of a house fire on Hathaway Avenue near his home. A neighbor, Mary Jane Tibbetts, told firemen she saw Wright at the house a short time before the occupants discovered the fire. Fire investigators recognized Wright's name as that of a person appearing at recent fires in the area. After determining the fire was incendiary in nature, fire department investigators ran a warrant check on Wright which disclosed three outstanding traffic warrants.

They located Wright at Mt. Sinai Hospital, where he had accompanied a fire victim from the scene. When fifth district police officers arrived, they verified the traffic warrants and formally arrested Wright. Officers later took Wright to the Justice Center and interrogated him. Wright was indicted in this case for aggravated arson (R.C. 2909.02). The charge stems, not from the Hathaway Avenue fire, but from an unrelated incident which allegedly occurred at 1366 E. 105th Street.

## I

The state's initial challenge is to the suppression of the tape-recorded statement Wright gave to police.

Wright's arrest occurred in a hospital corridor. Wright testified that investigators read him his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and that he asked to make a phone call before leaving the hospital but was told by police "you will get one downtown."

The officers took Wright to the Fifth District Police Station where he again asked to make a phone call but was put off again by police who said, "When we get finish [*sic*] with you."

Finally Wright was taken to the arson unit at the Justice Center and, for a third time, requested a phone call, while he awaited police interrogation, but police again denied him that opportunity. Officer Horgan, one of the investigators, had "no knowledge" Wright made a phone call. Police did not deny that he asked to use the phone. It was their position that he had not asked for an attorney.

At approximately 10:00 a.m. on the day following his arrest police brought Wright into the arson investigation office. Four officers were present. Thirty-eight minutes of taped conversation are in the file. We do not know how long an untaped interrogation, requested by Wright, lasted.

Although the officers advised Wright of his *Miranda* rights, he neither expressly waived them nor did he ask for counsel.

A waiver of the right to counsel must be knowing and intelligent. *Miranda, supra; State v. Chase* (1978), 55 Ohio St.2d 237, 9 O.O.3d 180, 378 N.E.2d 1064. The failure to request a lawyer or silence alone is not sufficient evidence of a valid waiver. *Miranda, supra.* Further, an express statement is not indispensable to a valid waiver. *North Carolina v. Butler* (1979), 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286. The question of waiver is determined by the totality of the circumstances in each case, including the defendant's background, experience and conduct. *Id.*

Even if an accused is determined to have knowingly and intelligently waived his right to counsel, the state must still demonstrate that the confession was voluntary. *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155. The question is "whether the defendant's will was overborne at the time he confessed." *Haynes v. Washington* (1963), 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; *Lynumn v. Illinois* (1963), 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922.

To decide if a confession was involuntarily induced, the court must again look at the totality of the circumstances, including the accused's age, mentality and prior criminal experience; the length, intensity and frequency

of the interrogation; any deprivation or mistreatment of the accused; and investigators' threats or inducements. *Edwards, supra,* paragraph one of the syllabus.

■ "Confessions of guilt made through the influence of hopes or fears, induced by promises or threats of temporal benefit or disadvantage, are wholly inadmissible." *Rogers v. Richmond* (1961), 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760; *Chase, supra.*

■ Upon review of the totality of the circumstances, we hold the court reasonably could find that Wright did not make a knowing and intelligent waiver of his right to counsel.

The taped interview reveals that the investigators advised Wright that if he did not cooperate with them, they had sufficient evidence to convict him of starting the Hathaway fire, as well as several other fires during the past five to six years. They also told him that he needed "medical" attention and that they would "help" him, if he told them he set the fire. Wright's continued denial of his involvement appeared to enrage the investigators, who repeatedly advised Wright that there was no question he set the Hathaway fire, they just wanted to know why.

Wright did not begin to incriminate himself until after police turned off the tape recorder at his request. Up to this point, Wright steadfastly insisted on his innocence and lack of involvement in any fire. After the pause, of undisclosed length, police questions shifted focus to an earlier porch fire at 1366 E. 105th Street. Wright began to tell a story which culminated in an admission of guilt in starting that fire.

During their interrogation, and before Wright made any incriminating remarks, the phone rang. The tape picked up the sound of a distant voice saying " * * * you're his attorney * * * " and "hang on a minute, I'll let you talk to my boss * * *."

It was some minutes after this juncture that Wright admitted he set the porch fire at the behest of his landlord.

Moments after the conclusion of the interrogation, officers brought in Wright's attorney Donald Mull and his associate George MacDonald, who had been kept waiting outside. Counsel advised Wright against making a written statement.

Later, Wright swore that he made up his story out of fear and a desire to appease the investigators.

At the suppression hearing, Wright's attorneys told the court that police deliberately prevented them from speaking to Wright until after they obtained a confession.

Mull, who had represented Wright on previous occasions, averred that he received a message from Wright's father at approximately 8:15 a.m. on the day of the interrogation. After learning from the father that police were holding Wright, Mull called George MacDonald, an attorney sharing space in his office, asking that he find Wright and advise police that Wright would not answer questions or make statements until his counsel, Donald Mull, arrived. MacDonald told the court he relayed the message to Detective Schmidt, who, we note, was present at the interrogation when Mull telephoned.

When the two attorneys arrived at the arson unit, they were kept waiting five to six minutes and were admitted to see Wright only at the conclusion of the interrogation.

Where police deliberately elicit incriminating statements from an accused while neglecting to inform him a family member notified his attorney, the Supreme Court has held such deceptive behavior to be violative of an accused's right to counsel. *State v. Luck* (1984), 15 Ohio St.3d 150, 15 OBR 296, 472 N.E.2d 1097, certiorari denied (1985), 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144, rehearing denied (1985), 471 U.S. 1095, 105 S.Ct. 2170, 85 L.Ed.2d 527.

Upon review of the totality of the circumstances including the facts that Wright had a client-attorney relationship with Mull, that Wright asked police at least three times to make a phone call and that police continued their interrogation knowing Wright's lawyer was waiting to see him, we cannot say that Wright made a knowing and intelligent waiver of his Sixth Amendment right to counsel.

█ We likewise cannot hold that, under the circumstances, Wright's confession was voluntary.

As we have noted, immediately after police read the *Miranda* warnings to Wright, they advised him that he needed medical attention and that they would provide it, in lieu of criminal prosecution, if he cooperated and "told the truth." In the face of his continued denial of guilt, officers raised their voices, angrily, told him he had lied, and repeatedly indicated that they had sufficient witnesses and evidence to convict him for this fire, as well as others, and so did not need a guilty admission.

At the suppression hearing, no one testified as to the length of time the tape recorder remained off and no one explained what occurred during the lapse. When taping resumed, subdued investigators' voices were beginning to elicit information as to Wright's knowledge of the earlier fire on E. 105th Street, which was not mentioned before the break.

The Supreme Court has held statements obtained by police promises of "help" to a nineteen-year-old suspect if he would "talk" to be inadmissible.

"A confession 'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *State v. Arrington* (1984), 14 Ohio App.3d 111, 114, 14 OBR 125, 129, 470 N.E.2d 211, 215, quoting *United States v. Tingle* (C.A.9, 1981), 658 F.2d 1332, 1335–1336.

We find the evidence was sufficient for the court to find that investigators induced Wright's confession by use of threats, implied promises and deprivation of legal counsel.

" 'The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police.   * * *

" '[If] the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible.  The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear.' "  (Emphasis omitted.)  *Arrington, supra*, 14 Ohio App.3d at 115, 14 OBR at 130, 470 N.E.2d at 216, quoting *People v. Flores* (1983), 144 Cal.App.3d 459, 469, 192 Cal.Rptr. 772, 776–777.

We find the trial court properly suppressed Wright's involuntary statement and this assignment of error fails.

## II

In its second assignment of error, the state urges that the trial court erroneously permitted Mull and MacDonald to be both advocates and witnesses during the suppression hearing.

DR 5–102 states:

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

DR 5–101(B) sets forth:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

■ DR 5–102(A) may require an attorney to withdraw from the representation of a client on whose behalf he must testify. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 258, 31 OBR 459, 461, 510 N.E.2d 379, 381. However, it "does not render the attorney incompetent to testify as a witness in a proceeding in which he is representing a litigant." *Id.* at paragraph one of the syllabus. It is prejudicial error for a trial court to prohibit an attorney from testifying because his role as counsel goes to the weight of his testimony, not to his competency to testify. *Id.*

■ Where an attorney needs to testify in a proceeding on behalf of his client, the trial court must first determine the admissibility of the testimony without regard to DR 5–102(A). *Mentor Lagoons, supra,* at paragraph two of the syllabus. Evid.R. 101(C)(1) mandates that the Rules of Evidence do not apply to preliminary questions concerning the admissibility of evidence pursuant to Evid.R. 104(A). Therefore, we hold that testimony relevant to the admissibility of a defendant's tape-recorded statement in a criminal trial may be considered by a court without reference to the Rules of Evidence.

■ When, as here, the trial court determines the testimony is admissible, the testifying attorney, opposing counsel, or the court, *sua sponte,* may request the attorney's withdrawal. *Mentor Lagoons, supra,* at paragraph two of the syllabus. At that time the court will consider whether the DR 5–101(B) exceptions would allow the attorney to testify and to continue representing the client. *Id.*

■ Attorneys Mull and MacDonald testified at the suppression hearing. At the time, Mull represented Wright and, on appeal, the court appointed MacDonald to be Wright's counsel. Neither the court nor defense counsel

requested withdrawal. The prosecutor objected to the lawyers' competency as witnesses, but did not call upon them to withdraw their representation. We find there was neither impropriety nor abuse of discretion in permitting counsel to testify. We further note that their testimony concerned their inability, by reason of state action, to render legal services to their client. An objection to this testimony was not well taken under these circumstances and the trial court properly admitted it.

This assignment of error fails.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and JACKSON, J., concur.

JAMES W. JACKSON, J., of the Lake County Court of Common Pleas, sitting by assignment.