DECISION
Defendant-appellant, Herschel Slaughter, appeals convictions for aggravated murder pursuant to R.C. 2903.01(B), aggravated burglary pursuant to R.C. 2911.11(A)(1), and aggravated robbery pursuant to R.C. 2911.01(A)(3). We find no merit to appellant's assignments of error, and we, therefore, affirm his convictions.
On December 13, 1997, appellant's ex-wife, Antoinette Slaughter, was found dead in her apartment. She had been struck in the head at least four times with a lead pipe while she lay in bed. Even though appellant and the victim had been divorced for over ten years at the time of the murder, their relationship had continued and appellant had often stayed with his ex-wife. Nevertheless, their relationship was stormy and they argued constantly. The state presented evidence that appellant frequently imposed himself upon Antoinette and that she only reluctantly allowed him to stay at her residence. Weeks before the murder, appellant had broken into Antoinette's residence. He was convicted of trespass as a result of that incident and was ordered to stay away from her.
The tension between the pair escalated when Antoinette started seeing another man. Shortly before the murder, appellant told a friend, Natalie Fields, that he wanted to beat his ex-wife. On December 12, 1987, the night before the murder, family members observed appellant and Antoinette arguing. They testified that appellant had grabbed Antoinette by the shoulders and had threatened her about her new boyfriend.
The following morning, appellant called his mother and told her to have his daughter, Dorthea Slaughter, check on Antoinette. Upon receiving her grandmother's phone call, Dorthea went to Antoinette's residence and found the screen door on the patio ajar. In the apartment, she discovered her mother's badly beaten body covered in blood, and she called the police. Later that day, appellant called her and asked her if she had checked on her mother. When she told appellant that Antoinette was dead, appellant hung up.
The police put out a flyer indicating that appellant was wanted for questioning in connection with the homicide. That evening, he was arrested at gunpoint and taken in for questioning. Initially, appellant claimed that he had gone to Antoinette's apartment and had found her dead. He panicked and ran out of the apartment because he knew he should not have been there because of the restraining order against him. Upon further questioning, appellant admitted that, upon entering the apartment, he had talked to Antoinette and then he had blacked out. Upon awakening, he found her covered in blood. He also acknowledged stealing her stereo to make it look as if a robbery had occurred.
The police discovered the stereo in Fields's apartment. Fields testified that, a few days before the murder, appellant had asked her if she wanted to buy a stereo. Shortly after the time of the murder, appellant called her from a pay phone near Antoinette's apartment and told her he had the stereo. He subsequently sold it to her for fifty dollars' worth of crack cocaine. He left Fields's apartment for several hours and returned the next morning. He was very tired, and before he fell asleep, he told Fields that his wife was dead. Fields believed that this statement was a ploy to get more drugs from her. She questioned him further, and he stated, "It wasn't worth it."
Appellant presents four assignments of error for review. In his first assignment of error, he states that the trial court erred in overruling his motion to suppress the statements he made to police. He argues that, at the time of questioning, he was intoxicated and exhausted, and that protracted and aggressive interrogation by police, in which they threatened and cursed at him, negated his waiver of his Miranda rights and rendered his statements involuntary. This assignment of error is not well taken.
Our review error involves two distinct issues: (1) Whether appellant knowingly, intelligently and voluntarily waived his Miranda rights; and (2) whether his statements to the police were made voluntarily under the Due Process Clause of the United States Constitution. We analyze both issues using a totality-of-the-circumstances test. See State v. Eley (1996),77 Ohio St.3d 174, 178, 672 N.E.2d 640, 646; State v. Cedeno (Oct. 23, 1998), Hamilton App. No. C-970465, unreported.
We begin with the Miranda analysis. The state bears the burden of proving by a preponderance of the evidence that the accused made a voluntary, knowing and intelligent waiver of his Miranda rights. Courts will not presume a waiver from the simple fact that the accused responded to the interrogation. See State v. Edwards
(1976), 49 Ohio St.2d 31, 37-38, 358 N.E.2d 1051, 1057-1058, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3147;State v. Heard (Aug. 13, 1999), Hamilton App. No. C-980443, unreported. A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne or that his capacity for self-determination was critically impaired because of coercive police conduct. See Statev. Dailey (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus; Heard, supra; Cedeno, supra. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." Dailey,supra, at 91, 559 N.E.2d at 463, quoting Moran v. Burbine (1986),475 U.S. 412, 422-423, 106 S.Ct. 1135, 1141.
We turn now to the issue of whether appellant's statements were voluntary under the Due Process Clause. The prosecution must prove by a preponderance of the evidence that a confession is voluntary. Lego v. Twomey (1972), 404 U.S. 477,489, 92 S.Ct. 619, 627; Heard, supra; Cedeno, supra. The Ohio Supreme Court has stated,
 In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.
Edwards, supra, paragraph two of the syllabus. Coercive police activity is a necessary predicate to a finding that a confession is involuntary within the meaning of the Due Process Clause. SeeColorado v. Connelly (1986), 479 U.S. 157, 167, 107 S.Ct. 515,522; State v. Combs (1991), 62 Ohio St.3d 278, 285,581 N.E.2d 1071, 1078.
Tape recordings of appellant's statements to the police were entered into evidence at the hearing on appellant's motion to suppress. The record reveals that the police advised appellant of his Miranda rights on several occasions. He read and signed a waiver-of-rights form, which he appeared to understand. Evidence of a written waiver form signed by the accused is strong proof that the waiver is valid. See Eley, supra, at 179,672 N.E.2d at 647. The tapes also show that appellant deliberately and knowingly declined to consult with an attorney until the end of the interrogation. When he finally asked to see an attorney, questioning immediately ceased.
Appellant argues that he was severely intoxicated at the time of the interrogation, and, therefore, that he could not have made a knowing waiver of his rights or a voluntary confession. While the police officers acknowledged that appellant had a slight to moderate odor of alcohol and that he was "under the influence of alcohol," they testified that he was not so intoxicated that he did not know what he was doing. The trial court believed their testimony. Matters as to the credibility of witnesses at a suppression hearing are for the trier of fact to decide. See State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583, 584. Further, intoxication, in and of itself, is not sufficient to render a confession involuntary. See Eley, supra,
at 177-179, 672 N.E.2d at 646-647; State v. Hughbanks (Dec. 3, 1999), Hamilton App. No. C-980595, unreported. In the tapes, appellant slurred his words somewhat, but he was generally responsive and answered questions appropriately, if belligerently. Under the circumstances, we cannot hold that his intoxication rendered his statements involuntary.
Appellant also contends that the length and intensity of the interrogation, as well as the use of threats by the officers, rendered his statements involuntary. Though the interrogation lasted several hours, the record shows that it was not inordinately long and that at least one break was taken. At one point, appellant claimed to be cold, and, very late in the interview, he stated that he was tired. However, he does not contend that he was denied food, drink or access to a restroom.
The tapes do show that the interrogation was, at times, intense, that the exchanges between appellant and the officers were heated, and that the language used by all parties was coarse. Appellant was combative and the officers, at times, responded in kind. Additionally, the officers told appellant that "his ass would burn" in the courtroom and in hell. While, generally, courts consider threats to be coercive police conduct, see State v. Cooey
(1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908; In the Matterof Goins (Nov. 22, 1999), Clinton App. No. CA99-04-011, unreported, we consider these statements to be relatively minor because they were obviously beyond the officers' ability to carry out. They are not nearly as serious as more specific threats, such as threats to charge the accused with other, separate offenses, to charge the accused with a greater offense, or to arrest and charge the accused's girlfriend if the accused does not confess. See State v. Wright (1990), 67 Ohio App.3d 574,587 N.E.2d 906; State v. Gray (1984), 14 Ohio App.3d 43,469 N.E.2d 1340.
Further, the tapes show that no incriminating statements resulted from any threats and that appellant's will was not overborne or his capacity for self-determination impaired due to threats or coercive police conduct. See Dailey, supra, paragraph two of the syllabus; State v. Collett (App. 1944), 44 Ohio Law Abs. 225, 58 N.E.2d 417, 425. Appellant's story at the start of the interview was that he had found his wife dead and that he had fled from the apartment in a panic. He never changed that story in response to threats or aggressive police questioning. He simply became more combative himself, and he never actually admitted to committing the murder. It was only during a later interview, under gentler questioning from a more sympathetic officer who had known appellant from his neighborhood while growing up, that appellant made more incriminating statements.
In sum, considering the totality of the circumstances, we hold that appellant's statements were not the result of coercive police misconduct and that he adequately understood his circumstances and the consequences of the decision to waive his rights. The state proved by a preponderance of the evidence that he had made a knowing, intelligent and voluntary waiver of hisMiranda rights and a voluntary confession. See Heard, supra;Cedeno, supra. Therefore, the trial court did not err in overruling his motion to suppress his statements, and we overrule his first assignment of error.
In his second assignment of error, appellant contends that the evidence was insufficient to support his convictions. He points to the lack of physical evidence showing that he committed the crime, arguing that police did not find his fingerprints on the pipe or the victim's blood on his clothing. However, circumstantial evidence is as valid as direct evidence, and the circumstantial evidence presented by the state amply supported the inference that appellant committed the crimes charged. See Statev. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus; State v. Apanovitch (1987), 33 Ohio St.3d 19,27-28, 514 N.E.2d 394, 402-403. After reviewing the record, we hold that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a rational trier of fact beyond a reasonable doubt that appellant committed the offenses of aggravated murder, aggravated burglary and aggravated robbery. Therefore, the evidence was sufficient to support his convictions, and we overrule his second assignment of error. See Jenks, supra, paragraph two of the syllabus.
In his third assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. After reviewing the record, we cannot conclude that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse the convictions and order a new trial. Therefore, appellant's convictions are not against the manifest weight of the evidence. See State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546-547; State v. Allen
(1990), 69 Ohio App.3d 366, 374, 590 N.E.2d 1272, 1278. Appellant's major argument is that the police officers' testimony was not credible, but matters as to the credibility of evidence are for the trier of fact to decide. See State v. Walker (1978),55 Ohio St.2d 208, 212, 378 N.E.2d 1049, 1051; State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Accordingly, we overrule appellant's third assignment of error.
In his fourth assignment of error, appellant states that he was denied effective assistance of counsel. He contends that his trial counsel violated an essential duty by informing the jury in his opening statement that appellant had been ordered to stay away from the victim as the result of the break-in at her residence a few weeks prior to the murder. Appellant contends that his counsel improperly placed highly prejudicial "other acts" evidence before the jury. We find no merit in this argument.
A properly licensed attorney is presumed competent, and the defendant bears the burden of showing ineffective assistance of counsel. See State v. Hamblin (1988), 37 Ohio St.3d 153,155-156, 524 N.E.2d 476, 479; State v. Hirsch (1998),129 Ohio App.3d 294, 314, 717 N.E.2d 789, 803. To sustain a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. See Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064. To establish that counsel's performance was deficient, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. See id. at 687-689,104 S.Ct. at 2064-2065; Hirsch, supra, at 314-315,717 N.E.2d at 803-804.
Defense counsel's reference to the restraining order was sound trial strategy. Evidence about the order would have undoubtedly been presented to the jury. It was a legitimate trial tactic to provide the jury with this information before the state to soften its adverse impact. See State v. Bradley (1989),42 Ohio St.3d 136, 144, 538 N.E.2d 373, 382; State v. Gowdy (June 26, 1998), Hamilton App. No. C-970359, unreported, motion to certify record allowed (1999), 85 Ohio St.3d 1445, 728 N.E.2d 211. More importantly, the restraining order was an integral part of appellant's defense. It explained why he had run away and had not called the police when he allegedly found the victim's body. Consequently, we cannot hold that counsel's performance fell below an objective standard of reasonableness, and appellant, therefore, has failed to meet his burden to demonstrate ineffectiveness of counsel. Accordingly, we overrule his fourth assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
 DOAN, P.J., GORMAN and PAINTER, JJ.