JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Mark Belle ("defendant" or "Belle"), appeals from his conviction of sexual battery. On appeal, defendant maintains that the trial court erred by denying his motion to suppress and by admitting certain evidence during trial. For the reasons that follow, we affirm.
 {¶ 2} Defendant was arrested in October 2006 being accused of the rape, sexual battery, and kidnapping of a female inmate while he was working as a corrections officer. Prior to trial, defendant moved to suppress his written statement along with any evidence obtained as a result of law enforcement's interrogation of him on October 14, 2006. The trial court conducted a hearing on the motion, where Detective Soprek ("Soprek") of the sheriff's department testified about his interrogation of defendant. Defendant also testified at the suppression hearing.
 {¶ 3} Soprek testified as follows. On Saturday October 14, 2006, Lt. Eakins instructed him to come to the sheriff's department to do an investigation, and he arrived around 3:40 p.m. Sergeant Joe Kelley briefed Soprek and Detective Sanchez ("Sanchez") on a situation between Belle and an inmate. Soprek then met with Belle, read him hisMiranda rights from a card in his wallet, including, "you have the right to talk to a lawyer and have him present with you while you are being questioned * * * if you cannot afford an attorney, one will be appointed to represent you before the questioning, if you wish."
 {¶ 4} When he asked Belle if he understood his rights, "[h]e said yes, but he wasn't clear on the attorney portion," so Soprek re-read that again. Belle was "still *Page 4 
hesitant." Then, Soprek told him "that if he wishes to have an attorney present, he can have one at anytime. There is no pressure on him to talk to us. As soon as he asked for an attorney, we will stop talking to him until an attorney is present." Soprek testified that Belle "was still quiet and hesitant and the rights were re-read to him again." At which point, Belle indicated he understood his rights and acknowledged that "he wanted to move forward" by having a conversation with Soprek and Sanchez.
 {¶ 5} Belle gave an oral and written statement. State's Exhibit 1 from the suppression hearing is Belle's written statement. Belle wrote the statement in the conference room of the warden's complex. Sanchez told Belle she did not believe Belle's initial version. Belle was asking, "if I write what you want me to write, can I go home?" Belle took an hour to compose his one-page written statement. Then Soprek and Sanchez included the following on the backside of the statement:
 {¶ 6} "Is this statement true and accurate to the best of your knowledge?
 {¶ 7} "MB: Yes.
 {¶ 8} "Have the Detectives of the sheriff's dept. threatened you in any way in exchange for this statement?
 {¶ 9} "MB: No.
 {¶ 10} "Have you been promised anything from the sheriff's dept. in exchange for your statement?
 {¶ 11} "MB: No." (State's Ex. 1, suppression hearing.) *Page 5 
 {¶ 12} Belle was detained from 2:00 p.m. until 8:30 p.m. when his statement was completed. After writing the statement, Belle was permitted to speak with his brother, who was also a corrections officer. Belle then claimed his statement was coerced and he wanted it back. Soprek refused to return it but offered to allow Belle the opportunity to supplement it the following Monday.
 {¶ 13} Although videotaping equipment was available on the premises, the detectives opted to take extensive notes of their conversation with Belle. Soprek transcribed the notes into the supplemental report that was marked as Exhibit B during the suppression hearing. According to the notes, Belle denied any wrongdoing. Belle described moving the inmate to allow her to get some water. At which point, the inmate started dancing and removing her clothes causing him to ejaculate. Belle first claimed he rubbed the semen into his pants and later said he flung some of it on the floor. Despite cajoling by Sanchez, Belle denied that the inmate made any oral contact with his genitals. He said he did not report the incident due to embarrassment. Belle reported that he had worked the corrections officer booking job for five years. Sanchez then told Belle what the detectives thought happened and that they did not believe his account. Belle asked if he should write down what Sanchez said had happened in his written statement. He was told to "write down the truth no matter what it is."
 {¶ 14} Belle then met with Soprek alone and asked what charges he was facing. Belle inquired what he had to do in order to go home. Belle asked, "if I wrote *Page 6 
what you wanted could I go home?" He was told "write what happened or write nothing at all but, [Soprek was] not making a deal with [him] to write one thing and go home." He was told to write the truth. Belle then asked what the inmate had said. Soprek eventually left the room.
 {¶ 15} Belle then asked to speak with Sanchez alone and asked her similar questions. The detectives told him to write the truth. At this point, Belle told Sanchez that the female inmate had grabbed his penis and started licking it.
 {¶ 16} Belle started writing his statement around 7:30 p.m. and finished around 8:30 p.m. Belle asked if he could go home but was told he was being arrested. Belle became angry and "stated over and over" that he wanted his statement back, claiming Soprek pressured it from him. Soprek was appalled at the accusations and said it was impossible to return the statement.
 {¶ 17} Belle also testified during the suppression hearing. He stated that on the 14th of October, 2006, he was placed in the master control room for three hours. During this time, he was not allowed to leave and claims he was told he could not have representation from, or contact with anyone.
 {¶ 18} By representation, he meant, "a union steward or an attorney, a union attorney." He asked Sgt. Branch if he could speak to the union attorney. Branch allegedly told him, "nobody in or out." He does not recall being read his Miranda rights. After Belle explained what happened, Sanchez repeatedly told him she did not believe him. The detectives wanted him to tell them another version and told him *Page 7 
if he cooperated they would talk to their supervisor and he might be able to go home. He wrote the statement because they did not believe his version and because they told him he would be able to go home. Belle was fearful of going to jail due to his position as a corrections officer and he wanted to be with his family. He claims he asked Soprek for representation but they kept questioning him.
 {¶ 19} The court asked Belle questions, including, "[y]ou never asked for a lawyer. You asked for union representation." Belle responded, "Yes. I asked for representation. Through that our union would contact them, because we have two attorneys. We have one type for the jail and one type if you go to court. And they would have contacted that type of lawyer so you can get some representation."
 {¶ 20} The court found Soprek's testimony more credible than the defendant's testimony. On that basis, the court overruled the motion to suppress defendant's statement. The matter proceeded to trial.
 {¶ 21} The State presented the testimony of 11 witnesses in its case-in-chief, including several employees of the sheriff's department and the victim. The victim stated that she was incarcerated in the Cuyahoga County Jail on October 14, 2006. She was alone in a holding cell when the female corrections officer left for a break. At that point, defendant approached and said she had to move to another cell to make room for more inmates. Then, according to her, defendant pulled his pants down and ordered her to perform oral sex or he would make her "life a living hell" and make sure she was sent to prison. She complied out of fear. After he *Page 8 
ejaculated, he took her back to the original cell and told her not to say anything. The female corrections officer was returning as defendant was leaving the area. The victim informed the female corrections officer what had occurred, who, in turn, reported it. The victim was ultimately taken to the hospital for examination.
 {¶ 22} Corrections Officer Birden, the female corrections officer on duty in the booking department of the county jail on October 14, 2006, testified next. The victim was the only female inmate booked that Saturday. She processed the victim inmate and then took a break for approximately 17 minutes. Officer Belle was in the female booking area and when he left the victim spoke with her about the incident. Birden contacted the corporal and the sergeant. The victim directed them to an area where a substance was found on the floor. The victim's clothes were collected and she was transported for examination.
 {¶ 23} The State then presented the testimony of Corporal Walsh of the Cuyahoga County Sheriff's Department. Corporal Walsh was supervising the inmates and officers in the county jail on October 14, 2006. Walsh observed the victim inmate in the vicinity of the booking area around 1:20 p.m. that day but she did not see anyone else in the area. Twenty minutes later, Walsh received a call and went to meet Sgt. Kelly, Birden, Corporal Chappel, and the victim inmate.
 {¶ 24} Sgt. Kelly of the sheriff's department also testified. He interviewed the victim inmate on October 14, 2006, who directed him to what appeared to be semen on the floor. He contacted his supervisors and notified the sex crimes unit. He had *Page 9 
Belle placed into the master control room for detention. Belle was held there for approximately two hours until being interviewed by Det. Soprek.
 {¶ 25} Through the remaining witnesses presented by the State, evidence was introduced that the substance on the floor was seminal fluid consistent with defendant's DNA profile. Forensic scientists were unable to detect any seminal fluid on either defendant's or the victim's personal effects or from the evidence collected from the victim's person, i.e., oral swabs.
 {¶ 26} Soprek's testimony at trial was consistent with the testimony at the suppression hearing.
 {¶ 27} The defense presented three witnesses and defendant's testimony. Three persons employed in a medical capacity at the county jail testified to their interactions with the victim inmate following the alleged incident. All of them consistently testified that the victim inmate was calm and was laughing and joking about the incident shortly after it had occurred. All of them found her behavior odd given the accusations she had made against defendant.
 {¶ 28} Defendant then testified in his defense. He maintained that the victim inmate began dancing and removing her clothes, which aroused him. He stated that both he and the inmate eventually were fondling his genitals until he climaxed, at which point he flung his semen on the floor and returned to work. He did not report the incident due to being embarrassed. He maintained that he wrote a different version of events in his written statement because he felt pressured to do so by the *Page 10 
detectives. He also acknowledged making some inconsistent statements during an administrative hearing.
 {¶ 29} The jury found defendant not guilty of rape or kidnapping but guilty of sexual battery. The court imposed a three-year prison sentence. Defendant timely appeals and raises three assignments of error for our review. We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 {¶ 30} "I. The trial court committed prejudicial error by refusing to suppress the written statement of appellant as an involuntary statement.
 {¶ 31} "II. The trial court committed prejudicial error by refusing to suppress the written statement of appellant and any testimony resulting from the uncounseled interrogation of appellant after he requested the presence of counsel."
 {¶ 32} We address these assignments of error together, since they both assert that the trial court erred by denying defendant's motion to suppress his statements. Defendant contends his written statement should have been suppressed because it was involuntary. Defendant also contends his written and oral statements should have been suppressed because he claims they occurred after he invoked his right to counsel.
 {¶ 33} In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973),34 Ohio St.2d 250. A reviewing court is bound to *Page 11 
accept those findings of fact if supported by competent, credible evidence. State v. Schiebel (1990), 55 Ohio St.3d 71. However, this Court engages in a de novo review of whether the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623,627.
 {¶ 34} The law applicable to the resolution of this assignment of error was set forth by this Court in State v. Wright (1990),67 Ohio App.3d 574, 577-578, as follows:
 {¶ 35} "A waiver of the right to counsel must be knowing and intelligent. [Miranda v. Arizona (1966), 384 U.S. 436; State v.Chase (1978), 55 Ohio St.2d 237.] The failure to request a lawyer or silence alone is not sufficient evidence of a valid waiver.Miranda, supra. Further, an express statement is not indispensable to a valid waiver. North Carolina v. Butler (1979), 441 U.S. 369. The question of waiver is determined by the totality of the circumstances in each case, including the defendant's background, experience and conduct. Id.
 {¶ 36} "Even if an accused is determined to have knowingly and intelligently waived his right to counsel, the state must still demonstrate that the confession was voluntary. State v. Edwards (1976),49 Ohio St.2d 31, vacated on other grounds (1978), 438 U.S. 911. The question is `whether the defendant's will was overborne at the time he confessed.' Haynes v. Washington (1963), 373 U.S. 503; Lynumn v.Illinois (1963), 372 U.S. 528. *Page 12 
 {¶ 37} "To decide if a confession was involuntarily induced, the court must again look at the totality of the circumstances, including the accused's age, mentality and prior criminal experience; the length, intensity and frequency of the interrogation; any deprivation or mistreatment of the accused; and investigators' threats or inducements.Edwards, supra, paragraph one of the syllabus.
 {¶ 38} "`Confessions of guilt made through the influence of hopes or fears, induced by promises or threats of temporal benefit or disadvantage, are wholly inadmissible.' Rogers v. Richmond (1961),365 U.S. 534; Chase, supra."
 {¶ 39} Defendant contends that the detectives continued to interrogate him after he invoked his right to counsel and also that his written statement was the product of coercive police activity. Although defendant claimed he expressed a desire for representation, he stated that he wanted union representation. There is also evidence that defendant asserted his request for representation to the officers that were holding him in the master control room rather than to the detectives that subsequently Mirandized and interviewed him. To the extent defendant testified that he told the detectives that he needed "representation," the record also contains evidence that the detectives painstakingly reviewed with defendant the Miranda warnings.
 {¶ 40} Soprek claimed he advised defendant of his right to an attorney at least three times and informed him there was no pressure to proceed. According to Soprek, defendant stated that he wanted "to move forward" and speak with them. *Page 13 
Then, after defendant completed a written statement, he was asked and answered the following questions in writing:
 {¶ 41} "Is this statement true and accurate to the best of your knowledge?
 {¶ 42} "MB: Yes.
 {¶ 43} "Have the Detectives of the sheriff's dept. threatened you in any way in exchange for this statement?
 {¶ 44} "MB: No.
 {¶ 45} "Have you been promised anything from the sheriff's dept. in exchange for your statement?
 {¶ 46} "MB: No." (State's Ex. 1, suppression hearing.)
 {¶ 47} The trial court expressly found Soprek more credible than defendant and overruled the motion to suppress.
 {¶ 48} The totality of the circumstances include that defendant had been a county corrections officer who worked in the jail for approximately seven years, he had no significant, if any, prior criminal involvement. While the interrogation lasted for approximately three hours, Soprek testified that they took breaks and that they repeatedly told defendant he did not have to say or write anything. Soprek vehemently denied pressuring defendant in any way and insisted that he told defendant he did not have to speak to them without an attorney present. Soprek acknowledged that he and his partner did not find defendant's initial version of events believable and that they told him so. Soprek denied making any promises in *Page 14 
exchange for defendant's statements. Det. Soprek indicated that defendant began questioning how different aspects of the alleged conduct could affect the charges and that he felt defendant was trying to "shop the Revised Code." For example, according to Soprek, defendant inquired about consensual activity and whether it would matter if he said she grabbed his genitals rather than performed fellatio.
 {¶ 49} Defendant testified that he was isolated in the master control room for several hours and not permitted to even use the restroom. He felt afraid of being put in jail due to his status as a corrections officer and felt if he cooperated with the detectives he could go home that day. Defendant claims he changed his story in an effort to gain his release and when he found out he was not going home he wanted his written statement back.
 {¶ 50} The trial court denied the motion to suppress, finding Soprek's testimony more credible than defendant's testimony. Deferring to the factual findings, as we must, the trial court did not err when it denied defendant's motion to suppress his written or oral statements that were made on October 14, 2006.
 {¶ 51} Defendant contends he was prejudiced by the denial of his motion to suppress because it impacted his decision to testify. This, however, is a moot point since the trial court did not err by denying the motion to suppress.
 {¶ 52} Assignments of Error I and II are overruled. *Page 15 
 {¶ 53} "III. The trial court erred in allowing evidence of prior investigation of appellant's involvement in sexual misconduct that did not result in charges or discipline."
 {¶ 54} Evid. R. 404(B) prohibits the introduction of evidence of other acts to prove the character of a person in order to show that he acted in conformity therewith. See, also, R.C. 2945.59. As a general rule, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to show that the defendant acted in conformity with his bad character. State v. Elliott (1993), 91 Ohio App.3d 763, 770. However, Evid. R. 404(B) states that other acts testimony may be admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 55} Evid. R. 402 bars the admission of irrelevant evidence. Evid. R. 403 prohibits the introduction of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Jacks (1989), 63 Ohio App.3d 200, 207.
 {¶ 56} Defendant maintains that the trial court erred by allowing certain testimony in violation of Evid. R. 404(B) and 403. The testimony at issue includes brief testimony of defendant concerning his prior experience with investigations by the sheriff's department during his employment. *Page 16 
 {¶ 57} On direct examination, defendant maintained that the employees of the sheriff's department accused him of lying and basically coerced inculpatory statements from him.
 {¶ 58} On cross-examination, defendant was asked whether "anything like this had ever been — have you ever had something like this happen to you before in your capacity as a CO?" After defendant responded "yes" he was asked to explain. Defendant said that another inmate had accused him and a coworker of touching her inappropriately. Defendant went on to clarify that he was exonerated of any wrongdoing, which the prosecutor stated, "I agree." The State went on to elaborate before the jury as follows: "And an inmate made allegations against you of a sexual nature. And the same sheriff's department vested [sic] those allegations and found that there was no merit behind them. Is that a fact?" Defendant said, "[e]xactly."
 {¶ 59} On re-direct, defendant testified that he was never charged with anything and that his involvement was in the nature of an eyewitness. The State did not contest this fact nor did they allege that defendant was ever charged with any prior act of this nature. Quite to the contrary, the State agreed that defendant was exonerated entirely of any wrongdoing. The testimony did not violate the provision of Evid. R. 404(B).
 {¶ 60} This testimony was relevant and probative of defendant's allegations that the sheriff's department engaged in coercive police activity during the investigation. Also, since defendant was exonerated of any wrongdoing and no *Page 17 
evidence was introduced to refute his contention that he merely was an alleged witness to the acts of another officer, the prejudicial impact, if any, of the admission of this testimony did not outweigh its probative value. One could even argue that this line of questioning helped defendant to the extent it buttressed the testimony the defense elicited throughout trial on cross-examination of various witnesses that inmates tend to fabricate stories against the officers. Accordingly, the trial court did not abuse its discretion nor did it violate Evid. R. 403 by allowing the testimony.
 {¶ 61} Assignment of Error III is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 PATRICIA A. BLACKMON, J., and MARY J. BOYLE, J., CONCUR *Page 1