OPINION
Appellant John Kulyk appeals the decision of the Guernsey County Court of Common Pleas that overruled his motion to suppress evidence seized by the Cambridge Police Department and a statement he made to Captain Randy LePage. The following facts give rise to this appeal.
The incident giving rise to the charge of having weapons under disability occurred on December 12, 2001. At that time, appellant resided in the second story of a two-apartment dwelling located on Sarchet Avenue, Cambridge. Jeremy Hamm, his wife and two-year-old son resided on the first floor of this dwelling. At approximately 7:00 p.m., Mr. Hamm heard loud banging coming from appellant's apartment. Mr. Hamm yelled, "Quit banging."
Shortly thereafter, Mr. Hamm heard gunshots coming from appellant's apartment. Mr. Hamm told his wife to take cover and he left the apartment to report the incident. Mr. Hamm returned to his apartment where he and his family stayed until the police arrived and escorted them to safety. In addition to Mr. Hamm, two other neighbors, Dan Decker and Christina Kiggans, also heard the gunshots and contacted the police.
The Cambridge Police Department responded to the calls and using a public address system, officers attempted to persuade appellant to leave his apartment and surrender his weapon. For approximately three or four seconds, appellant stepped out of his apartment onto a porch. Officer Philip Hall observed a small object in appellant's hand that was consistent with a weapon. Appellant did not attempt to communicate with the officers and returned to his apartment.
At approximately 8:00 p.m., Captain LePage arrived on the scene. Captain LePage attempted to communicate with appellant by megaphone and cell phone, with no avail. Thereafter, the SWAT team arrived on the scene and introduced gas into appellant's apartment. Appellant still did not leave his apartment. As the members of the SWAT team approached appellant's apartment, Officer John Caprita heard the racking of a handgun. The officers continued their attempt to communicate with appellant. When appellant did not come out of his apartment, the SWAT team made entry. The officers arrested appellant. As Officer Caprita secured the premises, he observed an empty gun holster and bullet holes in a door frame.
After the fire department cleared the gas from appellant's apartment, Captain LePage conducted a search. Captain LePage discovered a nine-millimeter handgun, an extra magazine and a partial box of ammunition in the bathroom vanity. Shortly thereafter, Captain LePage returned to the police station and interviewed appellant after advising him of his Miranda rights and receiving a signed waiver form. Captain LePage began recording the interview, but appellant indicated that he did not want the interview to be recorded. Captain LePage turned off the recorder and completed the interview.
During the interview, appellant informed Captain LePage that he owned a handgun and stated that if he did shoot a handgun that evening, he probably went outside and "cranked off" a couple of rounds in the air. Later that morning, Captain LePage returned to appellant's residence and searched the yard outside his apartment. Captain LePage found three spent shell casings in the grass near appellant's apartment.
As a result of this incident, a complaint was filed in the Cambridge Municipal Court charging appellant with one count of having weapons under disability. On January 8, 2001, the Cambridge Grand Jury indicted appellant for having weapons under disability. On February 20, 2001, appellant filed a motion to suppress evidence seized from his apartment and the statement he made to Captain LePage. The trial court conducted a hearing on appellant's motion on May 4, 2001. On May 11, 2001, the trial court issued written findings of fact and conclusions of law denying appellant's motion to suppress. Appellant subsequently entered a plea of no contest on May 31, 2001. The trial court sentenced him to one year of incarceration. Appellant timely filed his notice of appeal and sets forth the following assignment of error for our consideration:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.
 Standard of Review
Appellant challenges the trial court's findings of fact, in his first seven issues, on the basis that they are against the manifest weight of the evidence. We will not address the merits of the first seven issues as we find the remaining eight issues dispositive of this matter on appeal.
In his remaining eight issues, appellant claims the trial court incorrectly decided the ultimate or final issues raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623; and State v. Guysinger (1993),86 Ohio App.3d 592. It is based upon these standards that we review appellant's sole assignment of error.
The eight issues we find pertinent to this appeal concern appellant's warrantless arrest, the seizure of evidence and a statement he made to Captain LePage. We will address these eight issues as they pertain to the arguments raised by appellant in his motion to suppress.
A. Warrantless Entry and Arrest
In his eighth and ninth issues, appellant contends the Cambridge Police Department needed a warrant to enter his apartment and arrest him. The state responds that a warrant was not required to enter appellant's apartment and arrest him because probable cause and exigent circumstances existed that permitted the warrantless entry into his apartment and subsequent arrest.
In its judgment entry denying appellant's motion to suppress, the trial court concluded the initial entry into appellant's apartment was valid, under the emergency exception to the search warrant requirement, which created exigent circumstances that permitted the warrantless entry. Judgment Entry, May 11, 2001, at 4-5. The trial court also concluded that the entry was reasonable because the officers were merely discharging their statutory duty to prevent crime, preserve peace and protect persons and property. Id. We conclude the warrantless entry and subsequent arrest were valid as exigent circumstances existed to permit the warrantless entry and the officers had probable cause to arrest appellant.
The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. The Ohio Constitution, in Section 14, Article I, contains language nearly identical to that of the Fourth Amendment and also prohibits unreasonable searches and seizures. Thus, absent exigent circumstances, a warrantless search or seizure effected in a home is perse unreasonable. Katz v. United States (1967), 389 U.S. 347, 357. InPayton v. New York (1980), 445 U.S. 573, the United States Supreme Court stated: "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance of a house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id. at 590.
In State v. Bowe (1988), 52 Ohio App.3d 112, certiorari denied (1989),489 U.S. 1090, the Ninth District Court of Appeals identified six factors constituting exigent circumstances that would mandate a warrantless entry of a home. These factors are as follows: (1) the offense involved is a crime of violence; (2) the suspect is reasonably believed to be armed; (3) a clear showing of probable cause to believe that the suspect committed the crime involved; (4) a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry, though not consented, is made peaceably. Id. at 114.
We find the facts of this case constitute exigent circumstances thereby permitting the warrantless entry and arrest of appellant. Appellant's firing of a handgun in a residential area involved a crime of violence. Because phone calls from surrounding neighbors concerned gunshots, the officers knew that appellant was likely armed with a weapon. Probable cause existed to believe that appellant fired the gunshots as Mr. Hamm, who lived in the same dwelling as appellant, and surrounding neighbors indicated that the shots came from appellant's apartment. The officers knew appellant was inside his apartment as Officer Philip Hall observed appellant leave his apartment, step out onto his porch for a brief period of time, and then return to his apartment.
As to the last two factors to consider, due to the nature of this situation, in that it involved a police stand-off and the SWAT team was called in, arguably, it was not likely that appellant could escape as his apartment was surrounded by law enforcement officials. Further, because the SWAT team had to forcefully enter appellant's apartment, entry was not made peaceably. Although these two factors were not present due to the nature of this incident, we believe exigent circumstances did exist and therefore, the warrantless entry into appellant's apartment was valid.
We also conclude appellant's arrest was not in violation of theFourth Amendment. Generally, a warrantless arrest is unreasonable and violative of the Fourth Amendment. However, a warrantless arrest is valid if the arresting officer possessed probable cause to believe that the individual had committed or was committing a crime. See, e.g., Beck v. Ohio
(1964), 379 U.S. 89, 91. In determining whether probable cause to arrest exists, the totality of the facts and circumstances must be "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Id.; see, also, Gerstein v. Pugh (1975),420 U.S. 103, 111-112; State v. Tibbetts (2001), 92 Ohio St.3d 146, 153.
In the case sub judice, the totality of the facts and circumstances support the conclusion that appellant committed an offense. Specifically, three of appellant's neighbors heard gunshots from appellant's apartment and called the police department. Upon arriving at the scene, Officer Hall observed appellant, on his porch, with "a small item" in his hand, although he could not determine whether the item was a handgun. Tr. Suppression Hrng, May 4, 2001, at 41. Clearly, based upon this evidence, a prudent person would believe that appellant had committed an offense. Therefore, the warrantless entry and arrest of appellant did not violate the Fourth Amendment. The trial court properly denied appellant's motion to suppress as it pertained to the warrantless entry and arrest.
B. Search of Residence
Appellant addresses the search of his apartment in issues ten through thirteen. In its judgment entry, the trial court concluded that the discovery and seizure of the holster as well as the bullet holes observed in a door frame fell within the plain view exception to the search warrant requirement. Judgment Entry, May 11, 2001, at 5. The trial court also concluded that the seizure of the handgun was reasonable following the warrantless entry under an emergency exception and the inevitable discovery doctrine. Id.
In State v. Akron Airport Post 8975 (1985), 19 Ohio St.3d 49, the Ohio Supreme Court set forth the following judicially recognized exceptions to the search warrant requirement: (1) a search incident to a lawful arrest; (2) consent thereby signifying a waiver of their constitutional rights; (3) the stop and frisk doctrine; (4) hot pursuit; (5) probable cause to search and the presence of exigent circumstances; and (6) the plain view doctrine. Id. at 51. The burden is upon the state to overcome the presumption that warrantless searches of homes are per se
unreasonable by demonstrating that the search fell within one of these well recognized exceptions to the warrant requirement. Welch v.Wisconsin (1984), 466 U.S. 740, 749-750; State v. Kessler (1978),53 Ohio St.2d 204, 207. We will address those possible exceptions that apply to the case sub judice.
The trial court first concluded the discovery and seizure of the holster and the bullet holes observed in the door frame fell within the plain view exception. "* * * [I]n order to qualify under the plain view exception, it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent." State v. Williams (1978),55 Ohio St.2d 82, 85. We find the trial court properly concluded the holster and bullet holes fell within the plain view exception.
We have already determined that the initial intrusion into appellant's apartment did not violate the Fourth Amendment. Second, the discovery of the holster and bullet holes was inadvertent by Officer Caprita as he observed these items while he was securing the apartment upon initial entry. Finally, the incriminating nature of this evidence was immediately apparent as the officers had been called to the scene regarding gunshots.
The trial court also concluded the seizure of the handgun did not violate the Fourth Amendment under the emergency exception and the inevitable discovery doctrine. The emergency exception referred to by the trial court is the exigent circumstances exception. The Second District Court of Appeals addressed this exception in State v. Cheadle
(July 14, 2000), Miami App. No. 00CA03, unreported, at 2, and explained as follows:
 This exception is founded on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant. [Citation omitted.] In such emergency situations, police may have an urgent need to enter a home in order to protect persons or property, render emergency aid to injured persons, or prevent the imminent destruction of evidence. Katz, Ohio Arrest Search and Seizure (1999), Chapter 10, pp. 177-187.
 To justify a warrantless entry of a residence in order to seize a person or search for evidence of a crime under the rubric of exigent circumstances, not only must a true emergency exist which excuses the failure to obtain a warrant; police also must have probable cause that a crime has been committed. [Citations omitted.] A warrantless emergency entry cannot be used as a fishing expedition for evidence of a crime. [Citations omitted.]
 The right of police to conduct a warrantless search must be strictly circumscribed by the exigencies which justify its initiation. [Citation omitted.] Exigent circumstances may create a justification for a limited warrantless intrusion and search, but the duration and scope of that intrusion and search are evaluated in terms of the emergency, and once that emergency has been alleviated, further intrusion must be sanctioned by a warrant. [Citation omitted.]
We conclude the exigent circumstances exception to the search warrant requirement does not apply to the discovery of the handgun. When Captain LePage discovered the handgun, under the vanity in the bathroom, it was during the second entry into appellant's apartment. Tr. Suppression Hrng., May 4, 2001, at 61. This second entry occurred after appellant had been removed from his apartment and the fire department cleared the gas from the apartment.
The record reflects that no officers remained in the apartment following appellant's removal. Id. at 20. Appellant had already been handcuffed and removed from the apartment and Officer Caprita had cleared the apartment to make sure no other persons were inside. Thus, a true emergency no longer existed when the officers entered the apartment the second time. Therefore, once appellant was removed from his apartment, the emergency was alleviated, and any subsequent intrusion and search required a warrant.
The trial court also concluded the seizure of the handgun was not in violation of the Fourth Amendment under the inevitable discovery doctrine because "* * * the 9 mm gun would have been discovered apart from any alleged unlawful search as investigative procedures were already in place and a warrant could have likely issued on request." Judgment Entry, May 11, 2001, at 5.
The Fourth District Court of Appeals addressed the inevitable discovery doctrine in State v. Coyle (Mar. 15, 2000), Ross App. No. 99 CA 2480, unreported, at 5. The court explained:
 The inevitable discovery doctrine permits the introduction of evidence derived from a violation of a defendant's constitutional rights if the state can prove, by a preponderance of the evidence, that authorities would have ultimately discovered the evidence by lawful means. [Citations omitted.] The doctrine applies as an exception to the exclusionary rule[1], which ordinarily precludes the introduction of evidence that was either illegally obtained or an indirect product of unlawful police conduct. [Citations omitted.] The rationale behind the inevitable discovery doctrine is derived largely from the policy behind the exclusionary rule. The overriding reason for the exclusionary rule is to deter police from violating constitutional protections by excluding evidence seized as a result of such violations, notwithstanding the high social cost of depriving juries of relevant evidence suggesting a defendant's guilt. [Citations omitted.] If the police would have inevitably found evidence lawfully, this `deterrence rationale' has diminished importance. [Citation omitted.] * * * [T]he inevitable discovery exception prevents the state from being put in a worse position by refusing evidence that would have been lawfully discovered absent unlawful conduct by police. (Emphasis sic.) [Citations omitted.]
 Thus, the circumstances justifying application of the doctrine are most likely present when there are already investigative procedures in place prior to the unlawful seizure of evidence. [Citation omitted.]
We conclude the state failed to prove, by a preponderance of the evidence, that the Cambridge Police Department would have ultimately discovered the evidence by lawful means. There is no evidence in the record to indicate other investigative procedures were in place prior to the unlawful seizure of the handgun. Captain LePage testified he did not get a search warrant on the advice of the prosecutor that one was not needed. Tr. Suppression Hrng., May 4, 2001, at 80. Had Captain LePage testified that the police were attempting to get a warrant independent of Captain LePage's search, the inevitable discovery exception might apply. However, there simply is no evidence that any other investigative procedures were in place when Captain LePage discovered the handgun in the bathroom.
Even though the trial court erroneously denied the motion to suppress as to the handgun, we find this to be harmless error. Pursuant to Crim.R. 52(A), an appellate court should disregard any error "which does not affect substantial rights." When a constitutional right is involved, any error deemed to be harmless must be so beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 23.
Further, in State v. Tabasko (1970), 22 Ohio St.2d 36, syllabus, the Ohio Supreme Court held:
 In a criminal prosecution, the allegedly erroneous admission in evidence of items unlawfully seized is harmless beyond a reasonable doubt and does not provide grounds for a reversal of the conviction where the pertinent testimony of witnesses at trial is not the product of such seizure and is overwhelmingly sufficient to independently establish the elements of the offense beyond a reasonable doubt.
During the interview by Captain LePage, appellant informed him that if he did shoot a gun that evening, he probably went outside and "cranked off" a couple of rounds in the air.[2] Since appellant admitted to firing the handgun and three spent shell casings were found outside his apartment,[3] even if the handgun was inadmissible evidence, it would have had no impact whatsoever on the outcome of the case. Therefore, any constitutional error alleged by appellant was harmless beyond a reasonable doubt. The evidence presented at the suppression hearing, without the handgun, was sufficient to support appellant's conviction for having weapons under disability.
C. Appellant's Statement
Appellant also argues, in his motion to suppress, that the trial court should have suppressed the statement he gave to Captain LePage because it was not given voluntarily, Captain LePage failed to comply with Mirandav. Arizona (1966), 384 U.S. 436, and the statement was the fruit of an illegal arrest. Appellant raises these arguments in his fourteenth issue.
The Miranda case sets forth minimum requirements which the police must observe in conducting custodial interrogations. Appellant contends Captain LePage failed to comply with these minimum requirements because the waiver of rights form he signed was only witnessed by Captain LePage and the form contains signature lines for two witnesses. The failure to have two witnesses sign the waiver of rights form is not in violation of the minimum requirements of Miranda, as Miranda does not require a certain number of witnesses to observe a defendant's waiver of rights. Further, appellant testified, at the suppression hearing, that he signed the form. Tr. Suppression Hrng., May 4, 2001, at 92, 103. The record does not support the conclusion that Captain LePage failed to comply with the Miranda requirements.
Appellant also maintains he did not voluntarily waive his Miranda
rights. "Even if a defendant is properly Mirandized and a waiver of those rights is executed, a confession will not be admitted into evidence if it is shown to be involuntary." State v. Chase (1978), 55 Ohio St.2d 237,246. In considering whether a statement is voluntary, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.State v. Brewer (1990), 48 Ohio St.3d 50, 58, certiorari denied (1990),498 U.S. 881.
A predicate to finding a confession involuntary is the existence of coercive police conduct. State v. Dailey (1990), 53 Ohio St.3d 88, 91. The burden to establish the voluntariness of a confession, by a preponderance of the evidence, rests upon the state after a challenge has been mounted as to its admissibility. State v. Melchior (1978),56 Ohio St.2d 15, 25. Further, an express written or oral statement waiving Miranda rights is strong proof of the validity of the waiver.North Carolina v. Butler (1979), 441 U.S. 369, 373.
Our review of the record indicates appellant made a voluntary statement to Captain LePage. There is no evidence in the record that due to appellant's age or mentality he could not make a voluntary statement to Captain LePage. Appellant has had prior criminal experience. Also, there is no evidence that Captain LePage's interrogation of appellant was lengthy or intense. Captain LePage only questioned appellant once. Finally, there was no physical deprivation, mistreatment or threats made to induce appellant to make a statement.
Appellant testified, at the suppression hearing on cross-examination, that he believed when he told Captain LePage that he did not want the statement tape recorded that that was tantamount to stating he did not want to give Captain LePage a statement. Tr. Suppression Hrng., May 4, 2001, at 104. However, appellant did testify that he never told Captain LePage that he did not want to talk to him or that he did not want to give a statement. Id. Appellant also did not request a lawyer or indicate that he wanted to remain silent. Id. Further, appellant did not ask Captain LePage to stop asking him questions. Id. at 105. Based upon appellant's own testimony, we conclude appellant made a voluntary statement to Captain LePage.
Finally, appellant contends his statement was the fruit of an illegal arrest. However, we have already concluded that appellant's arrest was not illegal and therefore, this argument must fail. The trial court properly denied appellant's motion to suppress the statement he made to Captain LePage.
D. Spent Shell Casings
In his fifteenth issue, appellant contends the trial court should have suppressed the spent shell casings Captain LePage discovered the morning following appellant's arrest as they were the fruit of the illegal arrest and questioning and do not fall within the inevitable discovery doctrine. In its judgment entry, the trial court concluded that appellant had no standing to object to the search and seizure of the spent shell casings found outside the apartment, which he rents, as there was no expectation of privacy in the yard. Judgment Entry, May 11, 2001, at 6. The trial court also concluded it was reasonable to return to the scene in the morning to look outside the apartment for spent shell casings when there had been a report of gunshots. Id.
Appellant has the burden of proving that he had a legitimate expectation of privacy in the area searched. United States v. Salvucci
(1980), 448 U.S. 83, 86. Appellant must prove facts sufficient to establish this legitimate expectation of privacy in the area searched.State v. Steele (1981), 2 Ohio App.3d 105, 107. Further, the voluntary abandonment of property deprives a defendant of standing to challenge a subsequent seizure of said property. State v. Freeman (1980),64 Ohio St.2d 291, 297-298, certiorari denied (1981), 454 U.S. 822.
Appellant has failed to set forth facts to support a conclusion that he had an expectation of privacy in the yard. Appellant does not own the property and merely rents the apartment located on the property. Further, appellant voluntarily abandoned the spent shell casings when he fired the handgun. Finally, appellant was not seized prior to abandoning the spent shell casings and therefore, the seizure of the spent shell casings was not the result of a seizure of appellant.
Accordingly, the trial court properly denied appellant's motion to suppress as it pertains to the spent shell casings.
Appellant's sole assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed.
By: WISE, J., GWIN, P.J., and EDWARDS, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.
Pursuant to App.R. 24(A)(2), appellant shall pay costs.
[1] The trial court incorrectly concluded that the inevitable discovery doctrine is an exception to the warrant requirement. Rather, this doctrine is an exception to the exclusionary rule.
[2] Appellant argues the statement he made to Captain LePage should have been suppressed by the trial court. We address this argument at pages thirteen through fifteen of this opinion.
[3] Appellant argues the spent shell casings found outside his apartment should have been suppressed. We address this argument at pages sixteen and seventeen of this opinion.